WESTERN UNION TELEGRAPH COMPANY v. I. D. CRAIGE.

Decided November 16, 1906.

1.—Telegram—Delivery—Diligence.

The plaintiff was permitted to ask defendants' manager if he used the telephone in his office in his efforts to find the addressee of the telegram. The question was objected to on the ground that defendant could not discharge its obligation by delivering the message by telephone. Held, the objection was properly overruled because that was not the object or purpose of the question.

**2.—Same—Evidence.**

Certain witnesses for defendant testified that they were old residents of Beaumont and generally familiar with the city, but had never heard of St. Charles street. They were then asked if they knew the addressee of the telegram. Held, properly excluded because immaterial.

**3.—Argument of Counsel.**

In his closing argument counsel for plaintiff used the following language: "You need not fear that a large verdict will not be sustained by our higher courts, because large verdicts from this court have been sustained." The trial court promptly sustained an objection by defendant, and instructed counsel to desist. Held, in the state of the record, not reversible error.

Appeal from the District Court of Colorado County. Tried below before Hon. M. Kennon.

*Geo. H. Fearons* and *L. A. Hill,* for appellant.—The court erred in permitting the plaintiff to ask the witness Cerveny if there was a phone in defendant's office at Beaumont, and if he used the same to make enquiries for Mrs. Craige. Western U. Tel. Co. v. Sorsby, 5 Texas Civ. App., 382; Western U. Tel. Co. v. Pearce, 95 Texas, 578; Western U. Tel. Co. v. McLeod, 24 S. W. Rep., 815.

*Foard, Thompson & Townsend,* for appellee.

GILL, CHIEF JUSTICE.—I. D. Craige sued the telegraph company for $1,995 damages for mental anguish suffered by his wife on account of not being able to attend her mother's funeral. But for the failure of defendant to promptly deliver the telegram announcing the death, plaintiff's wife would have been present.

A trial by jury resulted in a verdict and judgment for $1,000, from which the company has appealed.

The facts are as follows: Mrs. I. D. Craige is the sister of Leon F. Dick and, at the time in question, resided at No. 1132 St. Charles Street, Beaumont, Texas. Her mother, who lived at Columbus, died there at 2:20 p. m. December 3, 1903. Thereupon Leon F. Dick delivered to defendant for transmission to his sister, Mrs. Craige, the following message:

"Columbus, Texas, December 3, 1903.
"To Mrs. Selma Craige, 1132 St. Charles St., Beaumont, Texas.
"Mother died at 2:20 p. m. today. Answer.
(Signed) Leon."

He prepaid the tolls.

The message was not delivered until about noon of December 4. Had the defendant exercised reasonable care to find the address the message would have been delivered the day it was sent and Mrs. Craige, by taking either a night or morning train, could and would have attended her mother's burial. It in fact reached her too late, as the funeral occurred on the afternoon of the 4th, and it would have been impossible for her to have reached Columbus in time after the receipt of the message.

The only issues made upon the trial were those of negligence on the

part of the defendant in failing to deliver the message promptly after it reached Beaumont, and the amount of damages in case of liability. The evidence bearing on the issue of negligence was in substance as follows:

At the time in question Beaumont was a town of 30,000 inhabitants. The message was correctly addressed. Mrs. Craige had lived at that address for two years. Letters addressed to her in the same way were delivered at her door. The grocer and other business men with whom she dealt in household matters knew her address and delivered goods to her daily. Their places of business were near the telegraph office in Beaumont. Quite a number of witnesses, business men, policemen and county officials, testified they knew of the existence of St. Charles Street and where it was. It was known at the postoffice, as was the name of Mrs. Craige.

The office records of defendant at Beaumont show that the message was in the hands of the messenger boy less than ten minutes. The boy testified that he had it altogether about fifteen or twenty minutes and returned it to the operator with the statement that he could not find the address. The manager admits that a postal card was mailed to the addressee about thirty minutes after the return of messenger boy advising her to call for the message and that the message was delivered next day on presentation of the card. On the other hand, the court permitted defendant to show by a number of witnesses that they were residents of Beaumont and had never heard of such a street. Among the number the sheriff and mayor, the county clerk, the deputy marshal, livery men, two postoffice clerks and others. It was not disputed however that there was such a street and address.

Neither the name of the street nor that of Mrs. Craige was in the city directory of 1903, nor was the street shown on the map of the city at that time. The street had been established by that name for over two years, and the plaintiff lived about three-fourths of a mile from the telegraph office.

Cerveny, the defendant's manager, testified that the message reached the Beaumont office at 2:48 December 3. That before the message was taken out inquiry was made in the office for St. Charles Street and no one knew its location. Witness looked in the city directory and found neither the street nor addressee's name. He examined the city map in the office and found no such street. The message was sent out of the office about 17 minutes after its receipt. The messenger boy took it, inquired at the postoffice and then reported non-delivery. Cerveny further stated that he personally inquired of twenty or twenty-five people and got no information. He also testified to the rapid growth at that time of the population of Beaumont. That the message was sent out again and inquiry made at hotels.

Plaintiff was permitted to ask this witness on cross examination if there was a telephone in the office, and if he resorted to it in making inquiry, and if he rang up the court house, the ice factory or the brewery and other points. The question was objected to, the objection overruled and the witness answered that there was a phone in the office, but that he had not communicated with either of the places inquired about. The ground of the objection was that the defendant could not dis-

charge its obligation by delivering the message by telephone. The ground of objection is not tenable, and no other objection was urged. The questions were not asked to show that the message might have been delivered in that way and was not, but were asked on cross examination in view of the fact that the witness, who was defendant's manager at Beaumont, had testified that he had made many inquiries personally, and had spent considerable time in search of the address, but admitted he could name no one to whom he addressed an inquiry outside the telegraph office.

Under the second, third, fourth and fifth assignments the appellant assails the action of the trial court in excluding the answers of several witnesses to the effect that they did not know Mrs. Craige. The same witnesses were permitted to state that they were old residents of Beaumont and generally familiar with the city but had never heard of St. Charles Street. We think the material part of their testimony was admitted and that the part excluded was immaterial. The assignments are overruled. (Western U. Tel. Co. v. James, 73 S. W. Rep., 79.)

The counsel for appellee in his closing argument to the jury used the following language: "It is for you to decide how much damages you shall give plaintiff. Whether it be $500, $1,000 or $1,500, or the full amount sued for, and you need not fear that a large verdict will not be sustained by our higher courts, because large verdicts from this court have been sustained." The language was excepted to at the time, and the trial court properly sustained it and instructed counsel to desist. Counsel did not further offend. The language had no proper place in an argument to the jury, and was reprehensible. It did not invite them, however, to go beyond their own honest judgment in fixing the amount. The vice in it consisted in stating that the higher courts had sustained large verdicts. The rebuke of the court appears to have been effective, and it is not likely the jury were influenced thereby.

The question is not whether counsel, guilty of the impropriety, should be disciplined, but whether the defendant has suffered an injury. In the state of this record we do not feel authorized to reverse because of the language complained of.

The record discloses no error authorizing a reversal. The judgment is therefore affirmed.

*Affirmed.*

Writ of error refused.