## TEXAS MIDLAND RAILROAD v. G. P. JOHNSON.

### Decided February 25, 1899.

**1. Railway Company—Highway Crossings.**

A railway company can not avoid liability for personal injuries due to the failure during the construction of the road across a highway to keep the highway in such a state as not to unnecessarily impair its usefulness, as required by the statute, upon the ground that the work of construction had been intrusted to an independent contractor. Rev. Stats., art. 4426.

**2. Same.**

The statutory duty imposed upon railroad companies to restore public highways crossed by their tracks to such state as not to unnecessarily impair their usefulness, is not postponed until the completion of the crossing, but includes the duty of guarding against accidents from the dangerous condition of a temporary way provided for public convenience during construction.

**3. Public Road—Proof of.**

Where the witnesses, in testifying, spoke of a road as a public road, and one of them stated that he was overseer of it, this was sufficient to justify a conclusion that it was a recognized public highway.

APPEAL from Delta. Tried below before Hon. HOWARD TEMPLETON.

*Alexander & Atkinson,* for appellant.

*Sharp & Banister* and *Hazlewood & Smith,* for appellee.

FINLEY, CHIEF JUSTICE.—This suit was instituted by appellee for damages on account of injuries sustained by his wife. It is alleged that the injuries were received by his wife by being thrown from and run over by a wagon while he was driving along a public highway at a point where appellant's road crossed said public highway. That at the point of the crossing of the highway the appellant, by excavations, made it entirely impassable and temporarily arranged another crossing for the public near by the original crossing. That he passed over this temporary crossing in the morning, then generally used by the public, going to Paris, and returning home in the evening he reached this point after dark. That deep excavations had been made there since he passed in the morning, and not observing them by reason of the darkness, he drove his wagon across, and in doing so his wheels went into the excavation and his wife was thereby thrown from the wagon, and run over by the wagon and injured, etc.

The defendant answered by general and special exceptions, plea of contributory negligence, that the work of construction was done by independent contractors, and a cross-bill against said contractors, which the defendant subsequently dismissed. The case was tried by a jury and resulted in a verdict and judgment for the plaintiff for $3250, from which the railroad company has appealed. The evidence fairly showed this state of facts.

In the original construction of appellant's roadbed it was necessary to cross the public road running from Ben Franklin to Unitia. This was a public road, recognized and maintained by the county, an overseer being appointed over it. At this crossing a cut about twelve feet deep was made, and was entirely impassable by the traveling public. A temporary crossing was made near by, and the traveling public was invited and did use this crossing for about the period of six weeks. While the work of constructing the railroad was being prosecuted at this place the plaintiff and his wife went to Paris in a two-horse wagon by this route. They passed over the temporary crossing in the morning safely, there being no excavations there at that time. Before they returned in the evening excavations were made in the work of construction at the temporary crossing and no other crossing provided. Appellee and his wife returned that evening, reaching this point after dark. Not seeing the excavations by reason of darkness, and not knowing or suspecting their existence, appellee drove his team and wagon over it. The wheels of the wagon went

into the excavation, his wife, with her babe, was thrown from the wagon into the ditch, and the wheels of the wagon passed over her, and she was thereby seriously and permanently injured.

It was shown that the work of constructing the railroad had been committed by the railroad company to the Bethune-Craney Construction Company, and it did the work in the capacity of an independent contractor.

It was not shown that appellee or his wife acted otherwise than should have been expected of ordinarily prudent persons under the circumstances.

*Opinion.*—First. The first contention made as a reason for the reversal of the judgment is, that the work of constructing the railroad having been performed by an independent contractor, the railroad company can not be held liable for injuries resulting from the manner of its performance. Our statute which grants to the railway company the right to construct its road across a public highway expressly requires that it shall be restored to its former state, or to such state as not to unnecessarily impair its usefulness, and shall keep such crossing in repair. Rev. Stats., 4426. The right granted is coupled with an imposed duty to the public. The responsibility for the discharge of this duty can not be shifted or evaded by committing the work of construction to an independent contractor. It is the railroad company upon which is conferred the right of eminent domain and it must be held responsible for the proper and legal exercise of that right. If the injury has resulted from a failure to perform this statutory duty imposed upon the railroad company, it can not escape liability by showing that it committed the work to an independent contractor. Railway v. Meador, 50 Texas, 77; Railway v. Ables, 72 Texas, 150; 3 Elliott on Railroads, sec. 1063.

Second. It is next urged that appellant exercised its right of eminent domain in a proper and legal manner, violated no statute, and can not be held liable for the consequences of a lawful exercise of its rights. This proposition involves the determination of the question whether the duty to the public imposed by statute upon the railway company in relation to the crossing of the public highway in question was performed. It was the manifest purpose of the Legislature enacting the statute to require of railroad companies constructing their roads along and across public highways to obstruct or interfere with travel over such public highways to the least degree practicable. They are required to restore it to the former state, not to unnecessarily impair its usefulness, and to keep it in repair. We think a liberal and fair construction of that statute would require the railway company not to wholly prevent passage of travelers along the way during the time of the construction of the railroad, when their passage may practically be provided for during the time the work is going on. If a temporary turn of the highway around the work of construction may practically be provided, then that would be a duty owed by the company to the public. This obligation was recognized in this

case, the temporary way was provided, the public invited to use it, and it was so used by the public. But after this way was provided for the public, it in turn was rendered dangerous by excavations, and by reason of no notice of its changed condition being given, and no watch being kept to prevent calamities to the traveling public, it became a veritable snare, by which appellee was entrapped and his wife frightfully injured. The statute does not say that the duty imposed shall not arise until the construction is completed, and we see nothing in its terms to indicate such to be its true intent. In our judgment, the facts in this case present a gross failure in statutory duty to the public, and the railroad company should be held responsible for the injuries which naturally and proximately resulted.

Third. It was contended that the road in question was not such a public road as is contemplated by statute. We have stated in our conclusions of fact that it was a public highway recognized and maintained by the county. This issue does not appear to have been a matter of contest on the trial. The witnesses generally said it was a public road. One testified that he was the overseer of that road, and as such he went and talked to the foreman of the work in regard to its construction. We think the evidence justifies the conclusion announced, and besides, there is no such contention or ground set out in the motion for a new trial. The motion for new trial only states "the evidence does not support the verdict," and this is too general to require notice.

There are no other assignments of error which possess any merit, and the judgment will be affirmed.

*Affirmed.*

Writ of error denied.