CHICAGO, ROCK ISLAND & PACIFIC RAILWAY COMPANY v. KATE SHANNON.

Decided April 11, 1908.

**1.—Railroads—Passenger Platforms—Dangerous Obstructions.**

Railroad companies owe to their passengers the duty of exercising a high degree of care for their safety; a passenger who temporarily alights from a passenger train while it is standing on a sidetrack waiting for another train to pass, does not thereby lose his relation and rights as a passenger, and the railroad company is liable to such a person for injuries received by him while attempting to board the train after it started, and caused by coming in contact with an oil can standing upon the station platform dangerously near the track, and this though the station was a mere hamlet, the depot but a box car, and the platform but sixty feet long.

**2.—Railroads—Passenger—Boarding Moving Train—Negligence—Question of Fact.**

Whether or not a passenger is guilty of contributory negligence in attempting to board a moving train is a question of fact for the jury under all the circumstances, and his admission that he knew it was always more or less dangerous to do so does not change the rule. In an action for personal injuries received while attempting to board a moving train, evidence considered, and held to justify the trial court in refusing a peremptory charge for the defendant, and in submitting the issue of contributory negligence to the jury.

**3.—Personal Injuries—Physical and Mental Pain—Evidence.**

It appearing from the evidence that, in an action for personal injuries, one of plaintiff's legs had been broken in the accident; the knee cap torn loose and replaced; that after the lapse of eighteen months the wound had never healed; that pus ran from it all the time; that it swelled and caused rigors, and that he continued to suffer from the injuries, testimony to the effect that plaintiff was nervous, and suffered physical and mental pain, was admissible, if, indeed, it was not a necessary inference.

**4.—Injury to Minor—Damage to Parent.**

Where it appeared from the evidence that a minor eighteen years old had been earning from $50 to $60 a month before he was injured; that he was con-

fined in a hospital at the point of death for seven weeks, and then carried home on a stretcher; that it was ten weeks before he got out of bed, and sixteen weeks before he could dress himself and walk on crutches, and that the necessary drug and medical bills amounted to more than one hundred dollars, a verdict and judgment for $1,000 in favor of his parents will not be set aside as excessive.

Appeal from the District Court of Tarrant County. Tried below before Hon. Mike E. Smith.

*N. H. Lassiter* and *Robert Harrison,* for appellant.

*A. J. Clendenen,* for appellee.

CONNER, CHIEF JUSTICE.—The appellee, Mrs. Kate Shannon, joined by her husband, W. H. Shannon, instituted this suit to recover damages for personal injuries alleged to have been received by Vernon Oliver, Mrs. Shannon's minor son, while he was a passenger on appellant's line of railway. The trial resulted in a verdict and judgment in favor of appellee for the sum of one thousand dollars.

It was alleged, substantially, that Vernon Oliver, a minor eighteen years of age, was a passenger on one of appellant's passenger trains from Calvin, Indian Territory, to Oklahoma City, Oklahoma Territory, on July 16, 1905, and that when his train going west reached the station of Tidmore it took a siding opposite the platform of the station and remained there for some fifteen or twenty minutes waiting for an east bound train; that during this time Oliver and a number of other passengers went over to the platform, crossing the main track, about twenty or thirty feet, intending to re-enter the train when it should be returned to the main track and stopped at the platform; that after the departure of the east bound train, the west bound, without giving any signal or warning of any kind, was backed onto the main track and went ahead on its journey to Oklahoma City, without stopping at the platform as Oliver expected it would do. He testified that in order to avoid being left he attempted to get on board the train, and while doing so he was struck by a large oil tank which appellant had permitted to stand on the platform within a short distance of the track, and was knocked from the steps and thrown under the wheels of the cars and his leg seriously injured.

It was charged that the appellant was negligent in failing to give a signal when the train was about to be put in motion before it was backed from the siding, and in failing to stop the train on the main line at the platform after it resumed its journey, and in failing to give a signal that the train would not be so stopped, and in permitting the oil tank to remain so near the track. It was alleged that Oliver was eighteen years of age, intelligent and industrious, and was earning fifty dollars per month, and that by reason of his injury he was incapacitated from performing any labor or earning any money, and the suit was brought to recover for Oliver's lost services during his minority and the expenses incident to his injury.

The appellant answered by a general denial, and an averment that

Oliver was guilty of contributory negligence in that he left the train, and in attempting to board it while rapidly running.

The court in its first paragraph instructed the jury that if they should find the facts as outlined in appellee's pleadings, and should find "that defendant was guilty of negligence in permitting said oil tank to be and remain in the position shown by the testimony, and in moving the train past the station without giving warning that this would be done, if such be the fact, and that such negligence, if any, was the proximate cause of the injury to plaintiff's son, and the plaintiffs are not precluded from other instructions herein, then your verdict will be in favor of plaintiffs." This charge is objected to on the ground that appellant did not owe to appellee's son a duty to have its platform at Tidmore so arranged that he would not be struck by an oil tank when he was attempting to catch a moving train after he had left it at Tidmore, and it is insisted that the charge was erroneous in submitting to the jury as a ground of negligence the leaving of the oil can on the platform where it was. It is further objected to the charge that it is erroneous in making the failure to give Oliver warning signals after it got on the main track of the purpose to proceed upon the journey negligence. It will be noticed, however, from the quotation from the charge that we have made that negligence in failing to give warning by whistle or otherwise of the purpose to resume the journey is not submitted as a distinct ground of recovery, but only in connection with or as an incident of the main ground, to wit, negligence in permitting the oil can to remain on the platform in such position as that appellee's son could come in contact therewith. By the charge, at all events, negligence in respect to the oil can was required before any recovery in appellee's behalf was authorized, and negligence in this respect was found by the jury, which we think undoubtedly created liability. The mere fact, therefore, that the jury were incidentally required to also find negligence in a failure to whistle, can in no way prejudice appellant.

It is not contended that when a traveler leaves a train, as did young Oliver, while standing at a way station, he loses his status as a passenger, but it is insisted that Tidmore, being but a hamlet with a box car for a depot and with a platform of but about sixty feet in length, as the evidence shows, it was not in duty bound to keep the platform unobstructed, but had the right to deposit freight at the point where the oil can was located, and the cases of Houston, E. & W. T. Ry. Co. v. Grubbs, 28 Texas Civ. App., 367; Davis v. Houston, E. & W. T. Ry. Co., 29 Texas Civ. App., 42; Ratteree v. Galveston, H. & S. A. Ry. Co., 36 Texas Civ. App., 197, and Texas & Pac. Ry. Co. v. Bell, 87 S. W., 731, are cited as sustaining appellant's contention. We think these cases, however, easily distinguishable from the one before us. For the most part they are cases where an injury occurred on parts of platforms or places not used at all for the purpose of getting on or off trains, or for reaching that part of a railway platform so used. The proof in this case shows that the box car depot was something like midway of the sixty foot platform that had been provided for the use of passen-

gers in getting on and off trains, and appellee's son testified that he was opposite the depot, and as the train passed, going some five or six miles per hour only, he took hold of the handles of the coach platform and had placed one foot upon the car step and while in this position and before he had succeeded in further entering, he came in contact with the oil can, which was within about eighteen inches of the track. There is nothing in the evidence to indicate that the west end of the platform, whereon was situated the can, was designed or used exclusively for the purpose of depositing freight, but if so, it would certainly be appellant's duty to so deposit its freight as not to be dangerously near a passing coach. An accident and injury such as indicated by the testimony in this case should have easily been contemplated by a depositor of an obstruction of the character in question so dangerously near passing trains. Appellant's duty was to exercise a high degree of care to all persons in the relation to it of a passenger, as might be illustrated by many cases too familiar to require citation.

In the sixth assignment it is insisted in effect that the evidence establishes contributory negligence on the part of Vernon Oliver, and in the second assignment that the court erred in refusing to give appellant's special charge No. 2, in the following words: "You are instructed that if you find the injured party, Vernon Oliver, knew that it was dangerous to attempt to board a moving train, and that he did so attempt to board a moving train, and that this was the cause of the injury received by him, you are instructed to find a verdict in favor of the defendant." The contentions just noted are predicated upon the following testimony of Oliver, viz.: "I know it is more or less dangerous to attempt to get on a moving train; I know that the faster it is going the more dangerous it is. Assuming it to be true that this train was coming from fifteen to twenty miles an hour, I know it would be very dangerous; if it had been going that rate of speed it would; I know it is very dangerous to attempt to board a train moving fifteen to twenty miles on hour, and I know it is dangerous to attempt to board any moving train." We think, however, that the second and sixth assignments should be overruled. Though Oliver may have known that it was dangerous in a sense to attempt to board the moving train, yet the evidence quoted does not necessarily constitute negligence. That was for the determination of the jury. In other words, the jury under all of the evidence could well conclude that a person of ordinary care and prudence would have attempted to board the train under the same circumstances rather than to abandon the journey. It hence would have been error to have taken this issue from the jury, as in effect sought by the special charge quoted. See Gulf, C. & S. F. Ry. Co. v. Gasscamp, 69 Texas, 545. And while Oliver used the language quoted in the course of his examination as a witness, we do not think that it is sufficient to overturn the verdict when considered in the light of all of his testimony. It is perfectly apparent from the whole that he could not have been understood as saying that he knew he was not in the exercise of ordinary care in making the attempt to get on the train under the circumstances as detailed by him.

He testified among other things, in substance, that when the train on which he was a passenger had backed off of the side track on which it had been standing, onto the main line, and when it had reached the platform in proceeding on the way to its destination, and while the train was traveling at a rate of five or six miles per hour, he made two or three steps in the direction in which the train was moving and without any effort placed his feet on the first step, having a firm hold on the railing, and that before the coach had proceeded more than half its length he was struck by the oil can and knocked off the train; that the oil can was sitting on the passenger platform not more than fifteen or eighteen inches from the track, and that a view thereof had been obstructed by a number of people standing between the oil can and the point where he attempted to board the train. He further testified that he had been in railway employment and was accustomed to getting on and off moving trains; so that, as stated, we think it perfectly apparent from Vernon Oliver's testimony, if it be credited, as the jury evidently did, that he did not understand that he was subjecting himself to any material danger in attempting to get on the train moving at no greater rate of speed than he says it was. It is true that the estimates of the speed at which this train was moving given by other witnesses varied from six to thirty-five miles per hour, but the court in its general charge submitted the issue of Vernon Oliver's alleged contributory negligence in a clause to which no error has been assigned, and we see no reason for disturbing the verdict on the issue.

In the third, fourth and fifth assignments objection was made to proof showing that Vernon Oliver as a result of his injuries was nervous and suffered physical and mental pain. There was testimony tending to show substantially that Vernon Oliver had the bone of one of his legs broken, the kneecap torn loose and replaced, that the wound has never healed, that pus runs from it all the time; that it swells and causes rigors and that he continues to suffer from the injuries. This being the condition after eighteen months have elapsed from the date of the injuries, mental and physical pain, it seems to us, necessarily arises as an inference. And besides, mental and physical pain may and often do affect the physical condition and illustrate the extent to which injuries from which such pain arises would disable the person injured from performing labor, and that was one of the material inquiries in this case. The third, fourth and fifth assignments are accordingly overruled.

The remaining assignment complains of the verdict as excessive, but this can hardly be maintained in view of the facts already stated, and of other evidence to the effect that Vernon Oliver was injured on July 16, 1905, and thereafter was confined in one of appellant's hospitals at the point of death for seven weeks and then carried home on a stretcher; that it was the first of October when he was first out of bed and then had to be held by two men; that it was the middle of November before he could dress himself and walk on crutches; that Vernon Oliver was earning at the time of his injury from fifty to sixty dollars per month, and that the drug

and medical bills necessitated by his injuries amount to one hundred and two dollars. We conclude that the judgment must be affirmed.

*Affirmed.*

Writ of error refused.