MISSOURI, KANSAS & TEXAS RY. CO. OF TEXAS V. A. L. DAVIS.

Decided February 4, 1909.

**1.—Deposition—Suppression—Failure to Answer Question.**

The overruling of a motion to quash a deposition because of the failure of the witness to answer a part of a question on cross-examination (whether any one had previously informed her of the substance of the interrogatories) is held to present no ground for reversal, it not appearing, in the state of the evidence, that it had materially prejudiced the appellant, nor that the discretion of the trial court was abused.

**2.—Evidence—Conclusion of Witness.**

Testimony that there was no cause known to the witness, other than the injuries for which recovery was sought, to account for the change in the health and disposition of plaintiff which he had testified to as following such injuries, was admissible over objection that it was a mere conclusion.

**3.—Charge—Omission.**

Errors of omission in the general charge of the court are cured by giving charges on the subject requested by appellant.

### 4.—Negligence—Proximate Cause—Contributory Negligence.

The act of a railway in leaving a caboose obstructing the crossing of a public road and in constructing a ditch rendering it more hazardous, held to support a finding of negligence and of its proximate connection with the injury of one whose horse, taking alarm at the caboose, ran into the ditch, and threw him out of his vehicle. Also held to disclose no such danger in the act of attempting the crossing as to necessarily tax him with contributory negligence.

### 5.—Railway Crossing—Impairing Highways.

The construction of a ditch by a railway at a crossing which unnecessarily impairs the usefulness of the highway is made unlawful by statute (Rev. Stats., art. 4426) and is a ground for action for injuries caused thereby; such liability does not depend on what a man of ordinary prudence would do with reference to construction of such ditch.

Appeal from the District Court of Hays County. Tried below before Hon. L. W. Moore.

*Fiset & McClendon,* for appellant.—A failure to answer a material question propounded in a cross-interrogatory is fatal to the deposition, unless it should appear that the answer could have been of no benefit to the party propounding the question. Railway v. Shirley, 54 Texas, 125; Lee v. Stowe, 57 Texas, 451; Coleman v. Colgate, 69 Texas, 88; Railway v. Crowder, 70 Texas, 222; New York, T. & M. Ry. v. Green, 90 Texas, 257.

Under no phase of the testimony was the ditch the proximate cause of the accident resulting in plaintiff's injuries, and the court should have so instructed the jury as requested by defendant in special charge No. 2. Kelley v. Railway, 97 Texas, 619; Railway v. Bigham, 90 Texas, 223; Neeley v. Railway, 96 Texas, 274; Neeley v. Railway, 60 S. W., 282; De la Pena v. Railway, 32 Texas Civ. App., 241.

Our statute permits the impairment of the usefulness of the public road insofar as such impairment could not be reasonably avoided. The charge asked was a proper application of the statute to the facts of the case, was not embraced in any other charge of the court, and its refusal was therefore error. Rev. Stats., art. 4426; Railway v. Able, 72 Texas, 150; City of Georgetown v. Commonwealth, 61 L. R. A., 673.

*Will G. Barber,* for appellee.—Much is left to the discretion of the trial court as to whether an entire deposition should be excluded for failure to answer some cross-interrogatory, and no error is shown where he refuses so to do unless the interrogatory refers to a material matter. This is particularly true where it appears that the omission was not willful. Houston & T. C. Ry. Co. v. Shirley, 54 Texas, 125, 149; Galveston, H. & S. A. Ry. Co. v. Baumgarten, 31 Texas Civ. App., 253; Kirby Co. v. Chambers, 95 S. W., 610; Stratford v. Ames, 8 Allen, 579.

Where a trial court is called upon to rule upon a motion to suppress a deposition it is competent for him to hear testimony as to any fact which will aid him in the exercise of the discretion conferred upon him, or in determining the propriety of suppressing the deposition. Garner v. Cutler, 28 Texas, 175; Avocato v. Dell'Oro, 57 S. W., 296; Railway v. Harkey, 88 S. W., 506.

If the two causes concurred in producing the result, then each was a concurring proximate cause, and defendant would be responsible. So, as defendant was the author of each, it is responsible if either was the proximate cause. Compress Co. v. Davidson, 80 S. W., 1032; San Antonio & A. P. Ry. Co. v. Trigo, 108 S. W., 1193; Ft. Worth & R. G. Ry. v. Morris, 45 Texas Civ. App., 596; City of San Antonio v. Porter, 24 Texas Civ. App., 444.

HODGES, ASSOCIATE JUSTICE.—The appellee sued the appellant to recover the sum of $30,000 for personal injuries alleged to have been received by his being thrown from his buggy while attempting to cross the appellant's track at a street crossing in San Marcos, Texas. The petition alleges, substantially, that on or about July 19, 1904, while the plaintiff was attempting to drive in a single buggy north along Austin Street in the aforesaid city, across defendant's track, his horse became frightened at a caboose, or something in or about the same, which defendant had negligently left standing upon and partially blocking the street; that the horse ran along this street and into a ditch which had been negligently dug in the street and negligently left unguarded and uncovered by the defendant, thereby throwing plaintiff violently out against the wheel and onto the ground and against a stake, with great force. The particular acts of negligence complained of are the leaving of the caboose blocking, or partially blocking, the public street, and the digging of the ditch in the street and leaving it uncovered and unguarded. The injuries complained of consist of bruises and of actual and internal injuries resulting from being thrown from the buggy, not necessary to be mentioned in detail.

The facts show that the accident occurred where Austin Street, in the city of San Marcos, crosses the appellant's track. The appellee was a wholesale merchant, and his place of business was located south of the appellant's right of way. The front of his building was towards the south, and was on what is known as the Martindale Road, or Cheatham Street. West of this building, and between it and Austin Street, was a vacant lot inclosed with a fence. The appellee lived north of the railroad; and in going from his place of business home by way of Austin Street he turned north into Austin Street at the intersection of the street with Cheatham; proceeding north he crossed three of the appellant's tracks, the first of which was called the "house track," or "Davis track." It was on this crossing that the caboose was standing, and this is the place where the accident occurred. There was another way by means of which the appellee might have reached his home, by going about one block farther west on Cheatham Street to Guadaloupe Street and then turning north to his home. By going this route only two tracks of the appellant were to be crossed, and the roadway ran under the I. & G. N. track. From the southwest corner of the vacant lot at the corner of Cheatham and Austin Streets, and running thence along the east side of Austin Street, there was, first, a fence extending to within about thirty feet of the house track, then a space of that distance of the vacant lot, on which stood a telegraph pole a few feet south of the house track. Close to this pole was a small boxed drain extending north under the house track and for

about thirty feet beyond. · At the north end of this drain was a ditch extending east at right angles and passing out of the street, across its east line, and thence into a small creek. This drain and ditch were constructed by the appellant some months prior to the accident, and were for the purpose of draining the surface water that came to the house track from the south along the east side of Austin Street. A little north of this ditch, just south of the second M., K. & T. track, stood a water tank. There was some controversy as to the exact location of the east line of Austin Street and the position relative thereto of the several objects mentioned.

About one o'clock, or a little after, on the day the appellee was injured, he was standing in the east door of his place of business, waiting for one of his employes to return from dinner. From this point he could see, and did see, the caboose partially blocking Austin Street. He had observed this for something like fifteen minutes before starting home. Upon the return of the employe the appellee and Miss Herndon got into his buggy, which had been standing in the vacant lot, and started home for dinner. They passed out of the lot into Cheatham Street, thence west to its intersection with Austin Street, and then turned north up the latter. There was an open space between the telegraph pole and the caboose, which the appellee estimates at about eighteen feet, through which he started to drive his horse and buggy in crossing the track. When within about twenty feet of the house track the horse became frightened either at the caboose or something in it, and began to run and plunge to the right, bearing away from the caboose and around to the east of the telegraph pole. As he did this the appellee was trying to pull him to the left. The buggy crossed the house track about ten or fifteen feet to the east of the telegraph pole; and in doing so, slightly threw the appellee out of balance, or unsteadied him. Appellee still pulled on the left rein, endeavoring to guide the horse back into the road and prevent a collision with the water tank which was in front of him. At this time the horse was going at a pretty lively gait, when the right front wheel ran into the ditch and the appellee was thrown out of the buggy. He struck first on the wheel with his right side, and was then turned over so that he landed on his back on the bank of the ditch, his back striking a stake, or some hard substance, from which his injuries are alleged to have resulted. The horse he was driving was one which the appellee testified was ordinarily gentle and easily managed. There was testimony tending to show that while the horse was attempting to shy around the caboose he was struck by the appellee with a whip. There was also a controversy as to the position of the caboose. The appellee and Miss Herndon testified that it extended into Austin Street about two-thirds or half way of the distance covered by the traveled road, while other witnesses stated that the traveled road was left entirely clear. Another point in controversy was the distance from the north end of the boxed drain to the east line of Austin Street; the appellee, who established the location of this east line by sighting down the telegraph poles, fixes the distance at from sixteen to eighteen feet; while another witness, from the actual location of the east line, and measurements, gives the distance as follows: From the east line of Austin

Street in a straight line at right angles thereto to the east corner of the north end of the boxed drain, is ten feet and four inches, and to the west corner of the north end of the boxed drain, twelve feet and five inches.

The trial resulted in a verdict and judgment for $5,000 in favor of the appellee.

The first assignment of error complains of the action of the court in overruling the appellant's motion to suppress and strike out the deposition of the witness Mrs. Willie H. Davis, (1) because it appeared therefrom that Miss Odie Herndon was present when said deposition was taken; (2) because the witness did not answer that portion of cross-interrogatory No. 11 wherein the witness was asked whether, before her deposition was taken, any one had stated to her the substance of the questions propounded to her. Cross-interrogatory No. 11 is as follows: "Have you read over the questions propounded to you before giving your deposition, or has any one read them to you or in your presence, or has any one stated the substance of the questions to you? If so, answer fully the facts in regard thereto. Have you done so? If not, why not?" To which cross-interrogatory she answered: "I have not read them, nor have they been read to me." It seems that the deposition was not returned into court until after the trial had commenced. As soon as practicable, however, a motion was made to quash, for the reasons stated. The appellee, by way of resisting and contesting that motion, proved by the notary who took the deposition of Mrs. Davis that the witness had not refused or failed to answer that portion of the interrogatory, but that she had answered the same, and that he, the notary, by inadvertence had failed to put down the answer. The appellant objected to this testimony by the notary, upon the ground that it was incompetent, immaterial and irrelevant; but the court overruled the objection and heard the testimony of the notary. After hearing this testimony the appellee in open court moved and requested the court to instruct the notary to take the deposition into his custody, and under the order and control of the court to summon the witness before him again, and again take her answer to that portion of the question referred to in the motion, and to have this answer appear in the question. In this connection it was made to appear that the witness was accessible to the notary, and that this would not delay the trial of the case. To this proceeding the appellant objected. The court, being of the opinion that the matter omitted from the answer was not material and that the same was omitted by an inadvertence, and the defendant being unwilling to permit the correction of it by the notary or by having the witness again answer that portion of the question, overruled the defendant's motion to quash, and permitted all of the direct interrogatories and other answers thereto to be introduced and read to the jury, with the exception of a portion of one interrogatory excluded for other reasons. To all of this the appellant reserved a bill of exception, and declined to offer in evidence the cross-interrogatories and answers.

It is the general rule adopted in this State, that where a witness fails to answer a material question, on motion of the opposite party the deposition should be suppressed. Houston & T. C. Ry. Co. v.

Shirley, 54 Texas, 125; New York, T. & M. Ry. Co. v. Green, 90 Texas, 257; Galveston, H. & S. A. Ry. Co. v. Baumgarten, 31 Texas Civ. App., 253. Such matters are generally entrusted to the discretion of the trial court, and the rulings of that tribunal will not be revised on appeal except when it is made to appear that this discretion has been abused. In this case the trial court held that the question was not material, and assigned that as one of the reasons for overruling the motion to suppress. The record shows that the deposition was taken in September, 1907, and after the Act of the Legislature of that year repealing and amending article 2284 of the Revised Civil Statutes, as theretofore amended, became effective. Under the provisions of the statute as it existed at the time of taking these depositions, the mere fact that a witness had been made acquainted with the interrogatories he was to answer, in advance of being propounded in the order prescribed, by the proper officer, was not a ground for suppression, the statute upon that subject having been repealed by the present law. Hence, if the witness in this case had answered the question here under consideration, and had stated that the substance of the interrogatories had previously been made known to her, that alone would not have authorized the suppression of the deposition. If such an answer could not have authorized the suppression, then the failure to answer could not have been more effective to that end unless such failure tended to deprive the appellant of some evidence material to its defense. The only possible benefit to appellant which could have resulted from a full answer to the question propounded would have been to furnish some facts which might have been used for impeaching the credibility of the witness. We think the appellant unquestionably had the right to propound the question and also had the right to have it answered; but we are of the opinion that, under the facts as disclosed by the record in this particular case, appellant did not sustain any injury by the failure of the witness to answer, even admitting that her answer might have disclosed facts which reflected upon her credibility. Practically but evidentiary matters were testified to by this witness; one as to the disposition for gentleness and docility of the horse being driven at the time of the accident; the other, to the effect that there was a change in the physical and mental condition of the plaintiff in the suit since the accident, and indicating the particular respects in which those changes were observable. As to the first she merely stated that she never saw anything vicious about the horses, referring to the one in question and another; that so far as she knew they were gentle and safe; that they had used them for driving the family about over the town, and had often gone around and about the depots and near the cars; that her husband regarded them as safe for family use, and they had never had any unusual experience with them in crossing the railroad tracks. As to the other, she stated facts tending to show that, prior to the accident, her husband was a strong, muscular, ablebodied man; that since the accident he was much changed, had grown melancholy and despondent, and frequently complained and exhibited evidence of having lost his former strength and ability to handle himself; that she knew of no cause for this changed condition except the injuries received at the time he was thrown from the buggy. These

facts all appear to have been established by testimony independent of that of the witness, Mrs. Davis. That the plaintiff sustained some injuries by being thrown from the buggy in the manner described by him is not denied by any witness. The extent of his injuries as shown is not here made the basis of any assignment of error. That after the accident he was a changed man in the manner alluded to by his wife is proven by a number of other witnesses. The disposition for gentleness and docility of the animal being driven at the time of the accident is shown by several other witnesses; and in no instance is there any evidence contradictory of that feature of the testimony, except that inferentially given by one of the witnesses for the appellant. He merely testified that he regarded the animals as fiery and fractious, but mentioned only one instance where such disposition was shown, and that upon an occasion when they took fright and started to run from an engine emerging from behind some cars. We can not say, in view of all the testimony, that there was any abuse by the trial court of his discretion in refusing to suppress the deposition.

Assignments Nos. three and four complain of the action of the court in permitting the plaintiff and his wife to answer certain questions which it is claimed called for the conclusions of the witness. Mrs. Davis was asked the following question: ."If you should show above in answering the interrogatories propounded that there has been any change in either the physical condition of A. L. Davis° or in his temperament, disposition or conduct since the receipt of such injuries, as compared with what he was before the receipt thereof, please state whether, so far as you know, there has been or is any other producing cause therefor than the said injuries." To this she answered, "I know of no other cause." A. L. Davis, the plaintiff below, was asked this question: "Mr. Davis, these details resulting from this accident—do you know of anything else in your life that has occurred that might have caused them?" To which he answered, "No." We do not think there was any error in overruling the objection to these questions. Pullman Car Co. v. Smith, 79 Texas, 468.

Whatever error there might have been in the general charge on the question of damages was one of omission and was cured by the special charge given on the same subject at the instance of the appellant.

Appellant presented two special charges and requested that they be given to the jury. One of them instructed the jury that the ditch constructed by appellant, and into which the buggy wheel is alleged to have run, was not the proximate cause of the injury, and that the jury should find for the appellant upon that issue. The other instructed the jury that no recovery could be had on account of appellant's having left the caboose standing on the crossing in the manner shown by the evidence. There was also a peremptory instruction presented and requested, directing the jury to return a verdict for the appellant. These special charges were all based upon the proposition that if there was any negligence in leaving the car standing in the street, or in the construction of the ditch in the manner shown, these facts being known to the appellee, his own negligence was the proximate cause of his injuries. None of these charges should have been given, unless we can hold as a matter of law that the appellee was

guilty of contributory negligence. The evidence was such as to sustain a finding that there was negligence in leaving the car on the crossing, and that digging and leaving the ditch in the street were also acts of negligence; and these were shown by the evidence to be sufficiently connected with the accident as to be considered the proximate cause, in the absence of intervening contributory negligence. The danger of being injured by an attempt to cross the street at that point, under the circumstances, and with an animal of the disposition and docility which most of the evidence tends to show was possessed by the one then being driven, was not, we think, sufficiently obvious to authorize us to say that no person of ordinary prudence would have undertaken it. The court did not err in refusing the requested charges. Shippers' C. & W. Co. v. Davidson, 35 Texas Civ. App., 558; San Antonio & A. P. Ry. Co. v. Trigo, 108 S. W., 1193. It can not be said that consequences such as are here shown to have happened could not reasonably have been expected to occur from the conditions produced by the appellant at that crossing. If so, then such conduct, if negligent, might be termed the direct and proximate cause of the injury. Texas & P. Ry. Co. v. Bigham, 90 Texas, 223.

The tenth assignment complains of the refusal of the court to give the following special charge:

"The jury are instructed that the mere fact that a ditch is dug into a public street does not per se as matter of law render such act negligence, even though the digging of such ditch in such public street may impair the usefulness of such street for the purpose of driving vehicles thereupon, but in determining whether or not such digging of such ditch in the street is negligence *all* the purposes for which such street is lawfully adapted should be taken into consideration; and in this connection the proper drainage of such street should be taken into consideration and therefrom it should be determined whether or not, under all the circumstances, and taking into consideration all the lawful purposes of such street, including the proper drainage of such street, a person of ordinary prudence, acting under the same or similar circumstances, would have dug such ditch at such place. You are therefore instructed, that if you believe from the evidence that a person of ordinary prudence, acting under the same or similar circumstances, and taking into consideration all the lawful purposes of such street, including the proper drainage thereof, would have dug such ditch at such place, then, and in that event such digging of such ditch in such street, if any, would not be negligence, and if you so believe from the evidence you will find for the defendant upon this issue; even though you may also believe from the evidence that such ditch, if any, impaired the usefulness of such street for the purpose of driving vehicles, and even though you may also believe, from the evidence, that such digging of such ditch in such street, if any, was the direct and proximate cause of plaintiff's injuries, if any."

It is claimed by appellant that this charge presents an issue not embodied in any part of the court's general charge. This is probably true; but we think it is also true that under the evidence the appellant was not entitled to have that issue so presented. The charge in effect authorizes the jury to acquit the appellant of negligence if they be-

lieved that a person of ordinary prudence, in the improvement and drainage of the street, would have dug the ditch and left it open and unguarded in the manner shown in this instance. Article 4426 of the Revised Civil Statutes provides that "such corporations shall have the right to construct across . . . any . . . highway which the route of said railway shall intersect; but such corporations shall restore the . . . highway . . . thus intersected . . . to its former state or to such state as not unnecessarily to impair its usefulness." If the usefulness of the street is unnecessarily impaired by the railway company the latter is guilty of negligence in failing to comply with the statutory requirement. The true issue in such cases, therefore, is not what changes and alterations a prudent person would have made under the circumstances, but, was the usefulness of the street unnecessarily impaired? · The one is not the legal equivalent of the other. International & G. N. Ry. Co. v. Butcher, 81 S. W., 819; Dallas & G. Ry. Co. v. Able, 72 Texas, 150; San Antonio & A. P. Ry. Co. v. Bowles, 88 Texas, 634; Taylor, B. & H. Ry. Co. v. Warner, 88 Texas, 642. The test of whether or not the railroad company had done its duty or had failed is not to be determined by what a person of ordinary prudence would have done under the same or similar circumstances. If the jury found that the usefulness of the street had been impaired unnecessarily in the construction of the railroad across it, or in the drainage of the track, they should also have found the appellant guilty of negligence in that respect. The charge requested, we think, would have furnished an erroneous guide to the jury, and was properly refused by the court.

The judgment of the District Court is affirmed.

*Affirmed.*

Writ of error refused.