QUANAH, A. & P. RY. CO. et al. v. GOODWIN et al. (No. 786.)†

(Court of Civil Appeals of Texas. Amarillo. May 15, 1915. On Motion for Rehearing, June 12, 1915.)

1. RAILROADS  303—INJURY AT CROSSING— STATUTE—NEGLIGENCE.

Under the statute granting to a railway the right to cross streets, but requiring it to keep such crossings in repair, the duty could not be shifted to an independent contractor, so that, where a railway's negligence, concurring with that of its contractor in obstructing a crossing, resulted in injury to plaintiff, it would be liable therefor.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 959–963, 966, 967; Dec. Dig.  303.]

2. RAILROADS  337—PERSONAL INJURIES— CROSSING CROSSINGS—LIABILITY.

Where plaintiff was injured when his horse became frightened at steel rails which defendant railroad piled in or near a crossing, the fact that the old wagon gear into which the

horse backed had been placed there by another did not excuse the railway from liability for its own wrong.

[Ed. Note.—For other cases, see Railroads, Dec. Dig. ⬤⇒337.]

3. RAILROADS ⬤⇒348—INJURY AT CROSSING—SUFFICIENCY OF EVIDENCE—CONTRIBUTORY NEGLIGENCE.

In an action against a railroad and its subcontractor for injury to plaintiff when his horse became frightened by a pile of rails which they had placed in or near a crossing, evidence *held* to sustain a finding that plaintiff was not guilty of contributory negligence.

[Ed. Note.—For other cases, see Railroads, Cent. Dig. §§ 1138–1150; Dec. Dig. ⬤⇒348.]

4. NEGLIGENCE ⬤⇒66—CONTRIBUTORY NEGLIGENCE.

It is not the law that, where a person is injured because of the negligence of another, he cannot recover because he knew there was some danger in the act through which he was injured.

[Ed. Note.—For other cases, see Negligence, Cent. Dig. §§ 86–89; Dec. Dig. ⬤⇒66.]

5. CONTRIBUTION ⬤⇒5—JOINT TORT-FEASORS.

Where a railroad and its contractor and subcontractor were negligent in obstructing a crossing, whereby plaintiff was injured, no contribution was recoverable as between the parties.

[Ed. Note.—For other cases, see Contribution, Cent. Dig. §§ 6–9; Dec. Dig. ⬤⇒5.]

6. MASTER AND SERVANT ⬤⇒318—INDEPENDENT CONTRACTOR—RAILROAD CONSTRUCTION.

A contract for railroad construction providing that the contractor should provide all grounds for the deposit of material when not within the limits of the railway's land, implied that, where grounds were within the railroad lands, the selections were left to it, and a subcontractor, required by its contract to deposit its material at the place selected therefor, was not an "independent contractor" in respect to placing the material at a point within the railway's land, but was a servant of the railway or the contractor, so that neither it nor its surety were liable for resulting personal injury to plaintiff.

[Ed. Note.—For other cases, see Master and Servant, Cent. Dig. §§ 1257, 1258; Dec. Dig. ⬤⇒318.]

Appeal from District Court, Cottle County; Jo A. P. Dickson, Judge.

Action by D. A. Goodwin against the Quanah, Acme & Pacific Railway Company and the Texas Building Company, in which the Southwestern Construction Company and the Commonwealth Bonding & Casualty Insurance Company were made parties defendant. Judgment for plaintiff against the Railway Company and the Building Company, and in favor of the Railway Company against the Construction Company, and for the Construction Company against the Building Company and the Bonding Company, and the Railway Company and the Bonding Company appeal. Affirmed as to other parties, and judgment against the Bonding Company reversed and rendered, and the Company discharged.

D. E. Decker, of Quanah, and F. H. Haddix, of Ft. Worth, for appellants. Browne & Hawkins, of Paducah, for appellees.

HUFF, C. J. This suit was prosecuted by the appellee Goodwin against the Texas

Building Company and the Quanah, Acme & Pacific Railway Company, for personal injuries alleged to have been sustained by reason of being thrown from his horse, which was frightened at a street crossing on appellant company's railway, by the obstruction of the crossing in piling steel rails in the street, etc. The railway company answered by denials of negligence on its part, and also alleged that it had contracted with the Southwestern Construction Company to build an extension of its road 40 miles from Paducah, in a southwesterly direction, and that under the contract this material was furnished, etc., and that the construction company had contracted with the Texas Building Company, the terms of which were set out, and that the Texas Building Company, under the contract, had executed a bond, payable to the construction company, with the Commonwealth Bonding & Casualty Insurance Company as surety thereon, and the railway company prayed that the construction company and the bonding company be made parties defendant, and prayed for judgment over against those companies, and the construction company answered, praying for judgment over against the Texas Building Company and the bonding company, on the contract and bond executed to it by said company. The case was tried before the court without a jury, and judgment rendered against the Texas Building Company and the Quanah, Acme & Pacific Railway Company for $1,100 damages jointly and severally against those two companies, and in favor of the railway company over against the defendant the Southwestern Construction Company for said sum, and in favor of the construction company against the building company and the bonding company for said amount. The Quanah, Acme & Pacific Railway Company and the Commonwealth Bonding & Casualty Insurance Company alone appealed. There is no appeal taken by the Texas Building Company and the Southwestern Construction Company.

The provisions of the contract necessary to a determination of this case, as we understand it, will be hereinafter set out.

The trial court filed his findings of fact, and found in part as follows:

"I find that the defendant the Quanah, Acme & Pacific Railway Company owned and operated a line of railway into and through the town of Paducah, Cottle county, Tex., and in and across McAdams street, a public street in said town of Paducah, Tex. I find that the defendant Texas Building Company, on or about the 11th day of ——, 1912, contracted with the defendant company the Southwestern Construction immediately for the construction and erection of an extension of its line of railway from Paducah, Tex., beginning at the terminus of its old line in the limits of the city of Paducah, Tex., to Roaring Springs, in Motley county, Tex. I find that during the life of the contract of the defendant the Texas Building Company for the erection and completion of its work in the construction of the extension of the line of railway of the defendant Quanah, Acme & Pacific Railway Company that said railway com-

pany permitted the defendant building company to use and acquiesce in the use of its old line of railway in and through Cottle county, Tex., and particularly the crossing at and upon McAdams street. I find that during the month of November, 1912, and especially on the 14th day of said month, the said building company, with the permission, acquiescence, and consent of said railway company, the owner of the said railway then completed on and across McAdams street, permitted McAdams street, and particularly the public crossing thereon, to become blockaded and in a bad and unsafe condition for travel by piling and permitting to be piled in said street and upon said public crossing large piles of steel rails, and in placing and permitting to remain in said street, in and upon said public crossing, a portion of an old wagon frame, and I find that said street and said public crossing, by reason of having said steel rails piled thereon, and by reason of having said wagon frame upon the same, was in an unsafe condition on the 14th day of November, 1912. I find that said street and crossing was not in the condition on said last-named date that it was prior to the crossing on said public street by said railway, and I find that the condition of said public street before the crossing thereof of the said railway company's line was in a good and safe condition, with no obstruction in said street or upon said crossing as aforesaid. I find that on the said 14th day of November, 1912, the plaintiff, D. A. Goodwin, was traveling from his home to the town of Paducah, Tex., and taking the nearest and most practical route which was to travel down said McAdams street and cross said railway at its intersection of the said McAdams street. I find that plaintiff was riding a gentle horse, and believed that he could cross said street without injury to himself. I find that on account of the condition of said street crossing, by reason of being out of repair, blockaded with large piles of steel rails, cars, and having an old wagon frame, consisting of wagon hounds, on said crossing, plaintiff's horse became frightened, fell with plaintiff, becoming entangled in said wagon hounds, and being frightened at said rails, and he, not having sufficient room on said crossing, by reason of its said condition, was unable to control said horse, and was injured by falling from said horse and into said wagon frame, and in the manner alleged in his petition. I find that, had said crossing been in proper condition, or in such condition as to not unnecessarily impair its usefulness to the traveling public, the plaintiff would not have been injured."

He then sets out the plaintiff's injuries:

"I conclude, as a question of fact, that the defendants the Texas Building Company and the Quanah, Acme & Pacific Railway Company were negligent in permitting said crossing and street to be in the condition it was at the time the plaintiff was injured, and I conclude that the negligence of said defendants was the direct and proximate cause of the plaintiff's injuries. I conclude that the plaintiff was not guilty of contributory negligence in acting as he did in attempting to cross said crossing at the time he received his injuries."

We shall not at this time set out other findings, but in discussing the several assignments will refer to the facts found by us in determining the questions presented by the assignments.

[1] The Quanah Acme & Pacific Railway Company's first assignment is that the court erred in rendering judgment against it in any sum, for the reason that the parties who caused the horse to become frightened were the employés of the Texas Building Company, and were not under the control of the railway company. The obstruction or material was placed at and in the street crossing the railway, from which the horse became frightened, and the trial court finds that the railway company permitted the building company to blockade McAdams street, and thereby placed it in a bad and unsafe condition for travel, by piling and permitting to be piled in the street and upon the crossing large piles of steel rails, and that on account of its condition at the crossing the horse of appellee became frightened, and that there was insufficient room caused thereby, and that appellee was unable to control the horse, and was thereby thrown and injured; and he finds, if the crossing had been in proper condition, and not in such condition as to impair its usefulness to the traveling public, appellee would not have been injured. The statute grants to a railway the right to cross streets with its road, but imposes upon it the duty of keeping such crossing in repair, and not to destroy its usefulness. This duty cannot be shifted to an independent contractor. If the railway permitted, and the two construction companies acted with it in the matter, we see no reason why they should not be jointly liable. Under the contract in this record, the Southwestern Construction Company agreed to furnish all material for the proposed extension of the road. The contract between that company and the Texas Building Company is to the effect that the Southwestern Construction Company should furnish the grounds upon which to unload and load material, and the Texas Company should place it upon the grounds so selected. The hands of the Texas Company were unloading the material so furnished at the place directed, and where the railroad company had "spotted" its cars. These companies, in so placing the steel rails, were acting together under an agreement. If this was the proximate cause of the injury, as found by the court, or if it was a concurrent act of negligence producing the injury, then the railway company cannot escape its duty by imposing it upon an independent contractor, and it will be liable for the injuries resulting therefrom. Railway Co. v. Johnson, 20 Tex. Civ. App. 572, 50 S. W. 1044; Railway Co. v. Haddox, 36 Tex. Civ. App. 385, 81 S. W. 1036; Railway Co. v. Davis, 53 Tex. Civ. App. 547, 116 S. W. 423; Railway Co. v. Randall, 51 Tex. Civ. App. 249, 113 S. W. 180; Railway Co. v. Gillenwater, 146 S. W. 589.

[2] The railway company's second assignment is to the effect that the judgment is erroneous for the reason that the horse backed into an old wagon gear in the street or near thereto, and that appellant was not responsible for placing it there, and that the gear occasioned the fall, and was therefore the proximate cause of the injury. The horse became frightened at the steel rails being piled in the street. Although the gear may have concurred in the injury, it would not defeat

a recovery from the negligence which occasioned the fright. The fact that the negligence of some stranger contributed to the injury will not excuse the railway for the wrong done. Gonzales v. City of Galveston, 84 Tex. 3, 19 S. W. 284, 31 Am. St. Rep. 17; Shippers' Compress, etc., v. Davidson, 35 Tex. Civ. App. 558, 80 S. W. 1032; Railway Co. v. Croskell, 6 Tex. Civ. App. 160, 25 S. W. 486.

The second proposition under this assignment, as we gather from the statement, is that because a noise was made in letting a rail fall or the sliding down of one of the rails by the employés of the Texas Building Company, an independent contractor, the railway company would not be liable therefor. This proposition and contention is answered by the authorities above cited.

[3, 4] The fourth and fifth assignments of error present the question of contributory negligence. It appears from the evidence there was a road around the end of the railway track, which was frequently traveled, and which was practically as near to town for the appellee as the one going over McAdams street. The appellee says he was riding an old, gentle horse, and that he usually went to town by McAdams street, crossing the railroad at that point. The employés were engaged in piling the rails at that time in the street. There was a space of about 10 feet between the pile of rails and a fence. The rails were being unloaded by sliding them in the street. When in about 15 feet of the pile of rails his horse was frightened and was snorting and was scared from the scent of the rails. He told the men they were in the street, and that there was small room to pass, but if they would be quiet probably he could pass, and when he was nearly through a rail fell, "when my old horse went out of his head," commenced jumping, rearing, and getting against a wire fence, and that he drew the horse away from the fence, and while jumping the horse backed into an old wagon gear and sat down on his haunches, and that appellee jumped off, and as he did so something struck him, perhaps the horn of the saddle. His injuries are then described. The contention is that he should have gone around the other road, and his failure to do so was negligence on his part, which will preclude a recovery. McAdams street was a duly dedicated street, and appellee's usual route to town. We do not believe, as a matter of law, the facts conclusively establish contributory negligence. We think it was a proper question to be determined by the court trying the case, from the facts. We do not feel warranted in saying it is so conclusive as to defeat a recovery. It has been stated by the courts that it is not the law where a person is injured because of the negligence of another that the injured one cannot recover because he knew there was some danger in the act through which he was injured. Railway Co. v. Shannon, 50

Tex. Civ. App. 194, 111 S. W. 1060; Railway Co. v. Randall, 51 Tex. Civ. App. 249, 113 S. W. 180. It was not obviously dangerous, and therefore negligence on the part of appellee, who was then riding a gentle horse, to travel a street and cross the railway at a point usual and customary with him, even though he may have known that the rails were being unloaded at that point. We do not think he was required to follow some other route, as a matter of law, in order to avoid a possible danger from appellant's negligence. It is not shown he knew it to be dangerous until he was in the midst of the danger. We think the court was authorized, from the facts, to hold that an ordinarily prudent man would have done as did the appellee upon the occasion in question. Railway Co. v. Smith, 49 Tex. Civ. App. 1, 107 S. W. 638; Railway Co. v. Robertson, 27 S. W. 564; Railway Co. v. Gillenwater, 146 S. W. 589; Railway Co. v. Bradford, 139 S. W. 1046; Railway Co. v. Hawkins, 49 Tex. Civ. App. 545, 108 S. W. 736; Railway Co. v. Medlenka, 17 Tex. Civ. App. 621, 43 S. W. 1028.

The Commonwealth Bonding & Casualty Insurance Company's first, second, third, and sixth assignments of error are overruled for the reasons given in disposing of the railway company's assignments. The bonding company's assignments from 4 to 9, inclusive, except the sixth, present error in the judgment against it, because: (1) There is no evidence of a contract indemnifying the railway company and the two construction companies against such damages; (2) the judgment was erroneous in decreeing a recovery over against the bonding company in favor of the Texas Building Company; (3) if any injury was sustained, it was through the concurrent negligence of the railway company and the Texas Building Company, and therefore no liability was shown on the part of the bonding company; (4) that it was error to render judgment against the bonding company in favor of the Southwestern Construction Company, because there was no proof that the extension was built under the contract between the construction company and the railway.

The street crossing where the injury occurred was on the railway company's line, which had been constructed and in operation some time previous to the contracts for the extension of the road from Paducah to Roaring Springs—40 miles. As above suggested, it was the duty imposed by the statutes upon the railway company to maintain the crossing and render it reasonably safe to the traveling public. The contract and facts show that on the 9th day of September, 1912, the Southwestern Construction Company entered into a contract with the railway company to build, construct, and place in operation the line of road to be extended. This construction company agreed to do all the grading, clearing, masonry, tracklaying, the erection of buildings, and to furnish all material and to do and supply all the other

things requisite and necessary to complete the roadbed, and prepare the roadbed for receiving the superstructure and lay the track and surface same. It is provided in that contract that the work may, under circumstances, be sublet, and the contract contains the following provisions:

"Ninth. The contractors will, at their own proper costs and expense, make and keep open, and in safe condition for use, all crossings, and approaches wherever the line of railway is traversed by or is adjacent to public or private roads or farm crossings, and will change and alter said roads, approaches, and crossings whenever required by the chief engineer or company during the construction of the line.

"Tenth. Contractors shall be responsible and liable for all damages of every nature whatsoever done to persons or property during the performance of the work and occasioned by his own act or neglect, or that of their subcontractors, foremen, or other employés or agents; and company will not be responsible for any damages occasioned to any person or to the public. If, however, company shall be held responsible for any damages, either to individuals or to the public, then, in such event, contractors shall indemnify company against all such damages, including cost and expense of defense; and the contractors will, at their own cost and expense, make and maintain such temporary provisions as may be necessary by way of fences or otherwise for the protection of persons and property during the performance of said work.

"Eleventh. Should there be any unsatisfied claims for damages to persons or property at the time of the completion of the work, the chief engineer of the company shall have the right to estimate and finally determine the amount of such damages and pay the same to the proper parties, and all such sums so estimated and paid shall be deducted from what is due the contractors. Contractors shall respect, adhere to, and comply with all ordinances and laws controlling or directing in any way the actions of those engaged upon the work, or affecting the materials or transportation or disposition of them, and shall be liable for any failure to do so, as indicated in the two preceding paragraphs of this section.

"Twelfth. All roads for hauling material and ways to and from the work, together with all grounds for the deposit of material and the erection of camps or shanties, or yards for the performance of the work, not within the limits of the company's lands, shall be provided by the contractors at their own proper cost and expense."

On the 10th day of September, 1912, the Southwestern Construction Company entered into a contract with the Texas Building Company. The first-named company is designated throughout the contract as "Company," and the second company is designated therein as "Contractor." After reciting the fact that a contract had been entered into between the railway company and the Southwestern Construction Company, the following provision is inserted:

"(1) Now, therefore, contractor hereby covenants and agrees under the penalties herein expressed, and in a bond bearing even date with these presents, and hereto affixed, at its own proper cost and expense, to furnish all teams, tools, equipment, and labor necessary for the successful prosecution and completion of all of the work called for in this contract, in strict conformity to the terms of this agreement and these specifications.

"Work to be Done.

"The work embodied in this contract is the construction of 40 miles of railroad for the Quanah, Acme & Pacific Railway Company, beginning at end of track at Paducah, Tex., and consists of the graduation, trestling, constructing culverts, tracklaying and surfacing, setting switches and road crossings, and turning over to the said party of the second part in first-class condition for operation."

It is stipulated further in the last contract:

"The contractor will receive f. o. b. cars at Paducah, Tex., all material furnished by the company, unload and store same in the material yards at his own expense."

"Temporary Tracks.

"(4) The company will furnish ground for material yard, but the contractor shall build all temporary tracks for material yard purposes at his own expense, and, after completion of work, take up such track materials as may have been used in said temporary tracks and store same on right of way in vicinity at such points as may be designated by the engineer."

"Contractor to Keep Crossing, etc., Open.

"(15) The contractor will, at his own proper cost and expense, make and keep open, and in safe condition for use, all crossings and approaches wherever the line of the railway is traversed by, or adjacent to, public or private roads or farm crossings, and will change and alter said roads, approaches, and crossings whenever required by the chief engineer or the company during the construction of the line.

"Contractor Responsible for Damages, etc.

"(16) The contractor shall be responsible and liable for any damages arising from injuries by himself, his subcontractors, foremen, mechanics, laborers, employés, or other persons, during the performance of the work, by reason of accident or otherwise, and from damages sustained by depositing materials to public injury, or of any person or corporation, including costs and expenses of defense, and the company will not be responsible for any damage occasioned to any person or to the public. If, however, the Quanah, Acme & Pacific Railway Company, or the 'Company' shall be held responsible for any damages, either to individuals or to the public, then, in such event, the 'Contractor' shall indemnify the railway company, or the 'Company' against all such damages, including costs and expenses of defense; and the 'Contractor' will, at his own proper expense and cost, make and maintain such temporary provisions as may be necessary by way of fences or otherwise for the protection of persons and property during the performance of said work.

"Claims Deducted by Railway Company.

"Should there be unsatisfied claims for damages to persons or property at the time when the final estimate for the doing of the work is made and returned, the 'Company' shall have the right to estimate and finally determine the amount of such damages, and to pay the same to the parties injured, and all such sums so paid shall be deducted from the amount due the 'Contractor,' as shown by the final estimate. The contractor shall respect, adhere to, and comply with all ordinances and laws controlling or directing in any way the actions of those engaged upon the work, or affecting the materials, or the transportation or disposition of them, and shall be liable for any failure to so do."

It is required by the contract that the Texas Building Company should give a bond in the sum of $50,000, with approved security. On the 24th day of September, 1912, the

Texas Building Company, with the Commonwealth Bonding & Casualty Insurance Company as surety, executed a bond in the sum of $50,000, payable to the Southwestern Construction Company, conditioned as follows:

"Whereas, the above bounden, the Texas Building Company, has entered into a contract with the Southwestern Construction Company for the execution of the graduation, masonry, and other work on a forty (40) mile extension of the Quanah, Acme & Pacific Railway Company, in a southwesterly direction from the town of Paducah, Tex., bearing date the 10th day of September, A. D. 1912, a copy thereof being hereto attached and made a part hereof:

"Now, the condition of this obligation is such, that if the said the Texas Building Company shall well and truly keep and perform all the terms and conditions of the said contract on their part to be kept and performed, and shall indemnify and save harmless the said the Southwestern Construction Company, as therein stipulated, then this obligation shall be of no effect; but otherwise it shall remain in full force and effect."

[5] It will be observed that the trial court found that the two companies were acting together in obstructing the street, rendering it dangerous. Under the contract quoted, the construction company was to select the yards for unloading the material while not within the limits of the railway company's lands. The facts also indicate that the railway company spotted the cars at the point in McAdams street, there to be unloaded. This part of the road was not included in that portion to be constructed under the contract. The railway company was in control of that portion of the road, and under the law the duty was imposed on it to maintain the crossing. We think clearly, under the law, it was a joint tort-feasor, and for the negligence so found by the court against all there was no contribution recoverable between the parties thereto under the facts of this case. Railway Co. v. Nass, 57 S. W. 910. We do not understand from the findings of the trial court that the employés engaged in unloading the rails negligently or wrongfully made the noise by letting fall the rail. It appears that the employés who dropped the rail did so without hearing the request of Goodwin, and it is not shown that the employé so dropping the rail knew that the horse was then frightened. The proximate cause of the injury was the negligence in placing the steel rails in the street, rendering it unsafe as a crossing. By the conditions of the bond, the bonding company is not made liable for the railway company's or the construction company's negligence, and those companies cannot recover against the Texas Building Company for their wrong or their joint wrong committed, in connection with the Texas Building Company, in unloading the rails at the place they did. They were each guilty, and, in so far as the two companies were concerned, there was no right of contribution between them, and therefore no right of action over against the bonding company. If there, in fact, was no negligence on the part of the railway company, but it was liable only on the ground that the law imposed a duty upon the railway, and the active negligence was that of the Texas Building Company, which caused the injury, then it may be that, under the terms of the contract and bond, the bonding company could be made to respond on its indemnity contract.

[6] By the twelfth clause heretofore quoted in the contract between the railway company and the construction company it is expressly provided that the construction company shall provide all grounds for the deposit of material when not within the limits of the railway's land. The clear implication is that, where grounds were within the railroad's lands, the selection was left to it. The point where the rails were being deposited was within the lands of the railway and on its then constructed road, with which neither of the contracting companies had anything to do, with reference to constructing or maintaining. The cars were taken to that point by the railway company for the purpose of unloading the material. Under the terms of the contract the Texas Building Company was not an independent contractor in placing the material at that point. It was required by its contract to deposit the material at the place selected therefor. Dublin v. Railway Company, 97 Tex. 535, 50 S. W. 120. It is said in that case:

"We think there can be no doubt that the effect of the clause above quoted was to reserve to the railroad company the power to designate the place at which road crossings, private or public, should be put in, and that as to such act Burkett & Murphy were not independent contractors." Railway Co. v. Waymire, 89 S. W. 452.

The contract between the Southwestern Construction Company and the Texas Building Company evidenced the fact that the construction company reserved to itself the right to select the place for depositing the material, and exacted a covenant on the part of the Texas Company that it would deposit it at that point. So in this particular the Texas Company was not an independent contractor, but in placing the rails where it did it was the servant of the railway company, or of the construction company. In so depositing this material, if negligently done, it was the negligence of all acting together, for which there could be no contribution. This particular act was not covered by the bond. If the Texas Building Company had not unloaded the material where it did, it would have rendered itself liable by the terms of its contract, and would have been liable to the construction company for failure to perform its obligation. Its principal caused the injury, and the agent would not be liable for the

act in executing the bond to perform the terms of the contract. The surety thereon should not be held liable for the acts of the obligee. We do not believe the bonding company liable under the contract, bond, and the findings by the trial court for appellee's injuries, which resulted from an act performed which had been reserved by the railway company and the construction companies as part of their duty; that is, selecting the place for depositing the material. The manner of doing the work was not the cause of the injury, but the place selected for doing it was the proximate cause thereof. In so selecting the place the statute was violated, and the traveling public endangered thereby, and this selection was made either by the railway company or the construction company, under the terms of their contract, which placed the selection of the ground for deposit under their control, and not under control of the Texas Building Company.

We believe the judgment should be affirmed in favor of Goodwin, against the Quanah, Acme & Pacific Railway Company and the Texas Building Company, and, as the building company and the construction company are not appealing, the judgment as rendered will be affirmed as to them; but, as to the Commonwealth Bonding & Casualty Insurance Company, the case will be reversed and rendered, and said company discharged, with its costs in this court, as well as in the court below, and the costs of this appeal will be taxed against the railway company.

### On Motion for Rehearing.

On the motions presented we call attention to the contracts as to who of the parties thereunder should furnish the material to be used in constructing the road: The Southwestern Construction Company by contract with the railway company undertook to furnish all the material. The Texas Building Company, under its contract, only undertook to furnish the tools, teams, etc., and to do the labor and to receive the material and unload at the place designated. In receiving the material and placing it at the point designated it was performing its contract. Either the railway company or the construction company, the building company's principal, selected the street into which the steel rails were to be unloaded, and in this matter either one or both, the railway company or the construction company, was negligent. In placing the steel rails in the street, the building company, under the contract, was but performing the direction of either one or both of said companies, and to that extent was the servant.

Both motions, the one by the railway company and by the construction company, are overruled.