WESTERN UNION TELEGRAPH COMPANY v. VINEY JAMES.

Decided February 28, 1903.

**1.—Telegraph Company—Negligence—Delivery of Message.**

Evidence held to sustain a finding of negligence in the nondelivery of a telegram to a colored woman living in a town of 2000 people, although the company's agent and its messenger boy each made inquiry for her of a number of people.

**2.—Same—Evidence.**

On the issue of negligence as to delivery evidence was admissible to show that the addressee was or was not well known in town, and that she lived near the telegraph office, but it was not admissible for witnesses to testify merely that they did not know her.

**3.—Same—Pleading—Contributory Negligence.**

A pleading alleging contributory negligence in that the message was not sent in care of the person for whom the addressee worked will not sustain a finding of such negligence in failing to give the information that she lived near a certain church.

**4.—Charge—Preponderance of Evidence.**

It was not error for the charge to define "preponderance of evidence" as meaning the greater weight of the evidence.

**5.—Same—Request Necessary.**

Complaint of the charge for failing to define "reasonable promptness" and "ordinary care" is unavailing where there was no request for instructions giving such definitions.

**6.—Telegraph Company—Mental Anguish—Verdict Not Excessive.**

Where, through negligent failure to deliver a telegram, a colored woman was not informed of the sickness of her child until after its death and burial, a verdict for $1995.25 is held not excessive.

Appeal from the District Court of Colorado. Tried below before Hon. M. Kennon.

*Norman G. Kittrell* and *Burns & Jayne,* for appellant.

*Adkins & Green,* for appellee.

PLEASANTS, ASSOCIATE JUSTICE.—Appellee brought this suit to recover damages for mental anguish caused by the alleged failure of appellant to use reasonable diligence to deliver a telegraphic message announcing the illness of appellee's child and received by appellant for transmission and delivery to appellee. The amount sued for was $1995.25. The trial in the court below by a jury resulted in a verdict and judgment for plaintiff for the full amount claimed in the petition. The material facts disclosed by the record are succinctly stated as follows:

On August 24, 1901, the plaintiff lived at Columbus, Colorado County, Texas, and on said date her son, Frank James, aged 6 years, who was visiting plaintiff's aunt, Eliza Garner, who lived at Simonton, Fort Bend County, became very sick. Plaintiff's aunt, being desirous of informing plaintiff of the condition of her child, sent a messenger to Eagle Lake,

in Colorado County, and there delivered to defendant's agent for and on behalf of plaintiff the following telegram: "To Viney James (colored), Columbus, Texas: Come at once. Your child very low. Eliza Garner."

In consideration of the sum of 25 cents paid to defendant by said Eliza Garner, defendant promised to transmit and deliver this telegram within a reasonable time to plaintiff at Columbus.

The telegram was promptly transmitted by the defendant's agent at Eagle Lake, and was received by its operator at Columbus at 2:05 p. m. on August 24, 1901. Within a few minutes after its receipt at Columbus it was turned over to defendant's messenger boy, with instructions to try to deliver it promptly. Neither the defendant's operator nor messenger boy at Columbus knew the plaintiff, or where she lived. The message was not delivered to plaintiff until several days after her child's death, when it was given her at her request. Plaintiff's child died at 7 o'clock p. m. on August 24, 1901, and was buried in the afternoon of the following day. Plaintiff did not hear of her child's sickness until the day after its death, when a messenger came from Simonton to Columbus and informed her that her child was dead. She did not receive the information in time to reach Simonton before the burial of the child. Had the telegram been promptly delivered, she could have reached Simonton before the death of her child and had the comfort of ministering to him in the last hours of his life and attending his burial.

Defendant's messenger boy at Columbus, Frank Prucha, testified that as soon as the mesage was given to him for delivery he at once began a search for the plaintiff and made inquiry of six persons, naming them, as to where plaintiff could be found, but none of them knew plaintiff or could give him any information as to where she could be found, except Mr. Weete, the postmaster at Columbus, who told him that he knew plaintiff, but did not know where she lived, and thought she was out of town because she had not called for her mail in some time. The other persons inquired of were colored men who had lived in Columbus for a number of years and were well acquainted with the colored people who lived in the town. Having failed to learn of plaintiff's whereabouts, Prucha returned to the telegraph office with the message at 3:40 p. m., and the operator sent a service message to the operator at Eagle Lake informing him that plaintiff could not be found and asking for further information as to her address. No further information could be obtained by the operator at Eagle Lake for the reason that the messenger who had brought the telegram from Simonton had gone back to that place. The operator at Columbus testified that while the messenger boy was out with the telegram trying to find the plaintiff he inquired of several persons, naming them, all of whom were acquainted in Columbus, as to whether they knew plaintiff, or could tell him where she lived, and none of said persons could give him any information on the subject. He also made inquiry of several persons after he sent the service message, but could find no one who knew anything about plaintiff. During the afternoon of the 24th he made inquiry of eight or nine persons.

The town of Columbus contains 2000 inhabitants. Plaintiff lived within three blocks of the telegraph office at Columbus, and was at home on the day the telegram was sent. Ben Davis testified for plaintiff that he heard Frank Prucha, on the evening of the 24th of August, 1901, tell John Walker that he had a telegram for plaintiff, and ask him if he knew where plaintiff lived, and Walker replied that he did not; that witness then said to Prucha that he knew plaintiff, and pointed to that portion of the town in which she lived, and told Prucha that if he would go there he could find her. Dan Davis, a witness for plaintiff, testified that Prucha asked him if he knew plaintiff, and he replied that he did not, but told him that she was a cousin of a Mrs. Conoway, who lived near the wood yard, and if he would inquire of her she could tell him where plaintiff lived.

Prucha contradicted the statements of both of these witnesses. The persons mentioned by Prucha and the operator at Columbus as those of whom they made inquiry as to where plaintiff lived all testified in the case, and stated that such inquiries were made, and that they did not know plaintiff, and could give no information as to where she lived.

Eliza Garner testified for plaintiff that she did not know at the time she sent the telegram for whom plaintiff was working. Plaintiff introduced thirty witnesses, each of whom testified that he had lived in Columbus for a number of years; that he knew plaintiff; that she was well known in said town, and that if the witness had been asked by Prucha or the telegraph operator, both of whom knew witness, he could have told them where the plaintiff lived. None of these witnesses saw the messenger boy or the operator, or was seen by them, on the 24th of August, 1901.

We conclude that the evidence is sufficient to sustain the finding of the jury that the appellant did not use ordinary care to deliver the telegram with reasonable promptness, and that by reason of such negligence on the part of appellant the appellee was damaged in the amount found by the jury.

The first asignment of error attacks the ruling of the trial court in admitting the testimony of each of the witnesses who testified that plaintiff was well known in the town of Columbus, and that if witness had been asked by the appellant's mesenger boy or the operator he could have told them where plaintiff lived. The proposition under this assignment is as follows:

"When the issue in the case was whether or not defendant's receiving operator and messenger boy exercised ordinary care and diligence to find the plaintiff in the case to whom the message (telegram) was addressed, who and whose address were unknown to said employes of defendant, and there was evidence tending to show ordinary diligence and care on the part of said employes in making inquiry and ordinary effort to find her to deliver the message, it is error in the court to allow plaintiff, over defendant's objection thereto, to prove by one witness or any number of witnesses (thirty in this case) that he or they knew the plaintiff

on the day or days in question, and that had he or they been asked by one of the said employes of defendant if he knew the plaintiff and where she lived, that he could have told where she lived, who she was, or could have given such information as would have enabled defendant to have found her, because such evidence is not competent, because it is irrelevant to the issue involved as to whether defendant's agents used due care or reasonable diligence under the circumstances surrounding them of time, place and opportunity for inquiry; such testimony can not afford any reasonable presumption of the principal fact or matter in dispute; it does not tend to prove it, and it does tend to draw away the minds of the jurors from the point in issue, and to lead them to believe that the burden was on the defendant to show why it was that at the time and place in question its agents did not interview each of the witnesses so tesifying, and make the necessary inquiry of such witness, and so such testimony excites the prejudice of the jurors and misleads them as to the real issue; and moreover, the adverse party, having had no notice of such a course of evidence, is not prepared to rebut it."

To enable the jury to determine whether the appellant, by the exercise of ordinary care, could have found plaintiff and delivered the telegram within a reasonable time they were entitled to have all of the circumstances surrounding the parties before them. It can not be doubted that if plaintiff had been a prominent citizen of the town that fact could have been proved as a circumstance tending to show that her place of residence could have been ascertained by the use of ordinary diligence on the part of appellant's agents, notwithstanding such agents may not have known the plaintiff and may have inquired of a number of persons who could give them no information upon the subject. The proximity of plaintiff's residence to the telegraph office, which was shown without objection, was also a circumstance which the jury might properly consider upon the issue of negligence. The fact that plaintiff was well known in the town of Columbus was a circumstance pertinent to the inquiry as to whether she could have been found by ordinary diligence on the part of appellant's agents. If she had been an obscure person who lived in a distant portion of the town from the telegraph office and was known to only a few persons, such facts could have been shown by the appellant as a circumstance tending to show that its failure to find her was not negligence. All of the witnesses introduced by the plaintiff upon this issue testified that they knew her, and that she was well known in the town. This was the only material part of their testimony. The further statement made by these witnesses to the effect that if appellant's messenger boy had inquired of them they could have told him where to find plaintiff, was nothing more than a repetition of the statement that they knew where the plaintiff lived, or was rather an inevitable conclusion from such statement, and its admission in evidence, if error, was manifestly harmless. This testimony was not calculated to lead the jury from the issue in the case, nor were they likely to have concluded from its admission that the defendant was guilty of negligence in failing to inquire

of all of these witnesses or of any particular one of them as to plaintiff's place of residence. Its only object and effect was to assist the jury in determining whether, under all of the evidence in the case, the defendant exercised ordinary diligence to deliver the telegram with reasonable promptness. Telegraph Co. v. Carter, 20 S. W. Rep., 834.

The second assignment of error complains of the action of the trial court in refusing to allow the defendant to prove by the sheriff, the district clerk and two other witnesses, that they had each lived in the town for a number of years and were well acquainted in said town and did not know the plaintiff. Neither the messenger boy nor the agent had asked any of these witnesses for information as to the plaintiff. The court permitted the defendant to ask all of these witnesses whether the plaintiff was well known in the town of Columbus, and all of them stated that they had no knowledge as to this fact. The fact that none of these witnesses knew plaintiff was not material to any issue in the case, and their testimony was properly excluded.

The trial court did not err in refusing the special instructions requested by the defendant, as contended in the third, fourth and seventh assignments of error. The issues presented by these instructions were fully and correctly submitted to the jury in the main charge.

The only contributory negligence pleaded by the defendant was the failure of Eliza Garner to send the telegram in care of the person for whom plaintiff was working. This pleading would not support a finding of contributory negligence because of the failure of said Eliza to inform defendant's agent that plaintiff lived near the Baptist church, and the trial court properly refused to instruct the jury that plaintiff could not recover if Eliza Garner was guilty of contributory negligence in failing to inform appellant's agent that plaintiff lived near said church. This disposes of the issue presented by the fifth assignment.

In the sixth assignment the appellant complains of the charge of the court in that it defines the term "preponderance of evidence" as meaning the greater weight of evidence; and in the eighth assignment complains of the charge because it fails to define the term "reasonable promptness" and ordinary care. Both of these assignments are without merit. The definition of the term "preponderance of evidence" given by the court was accurate, and no injury could possibly have resulted to the appellant by giving such definition. It may have been unnecessary for the court to have defined the term, because its meaning is well known and understood by jurors of average intelligence, but having defined it accurately, the appellant has nothing of which to complain.

The failure of the court to define the terms "reasonable promptness" and "ordinary care," if error, can not be regarded as affirmative error, and appellant not having requested the giving of a special instruction accurately defining said terms, can not now complain of the failure of the court to give such definition.

The remaining assignments of error attack the verdict and judgment as being excessive and contrary to the great weight and preponderance of

the evidence.  As before stated, we think the evidence is sufficient to sustain the verdict for the plaintiff, and that the amount found by the jury is not excessive.  There is nothing in the evidence nor in the form or amount of the verdict which indicates that the jury were influenced by any improper motive.  The judgment of the court below will be affirmed, and it is so ordered.

*Affirmed.*

Writ of error refused.