BUTTERICK PUBLISHING COMPANY, LIMITED, V. GULF, COLORADO AND SANTA FE RAILWAY COMPANY.

Decided June 3, 1905.

### 1.—Connecting Carriers—Delay—Liability of Each Line.

Where a contract for a through shipment of wool to market provided that the initial carrier's liability should "terminate on tender of delivery to a connecting carrier," and there was negligent delay in making such tender, the initial carrier could not escape liability for the resultant damages (lower market price) merely because its own delay would not have caused such loss if there had been no delay on the part of the connecting carriers, since each carrier was liable for their combined negligence.

### 2.—Same—Proximate and Concurring Causes.

Where loss results from concurring causes no one of them is remote, but all are proximate.

Appeal from the County Court of Bosque.   Tried below before Hon. B. J. Wood.

*Wood & Henderson* and *Robertson & Robertson,* for appellant.

*J. W. Terry* and *A. H. Culwell,* for appellee.

Conner, Chief Justice.—This action was brought by appellant against the appellee in the County Court of Bosque County to recover damages in the sum of $441.74 and interest, because of alleged negligent delay in the transportation and delivery of two carload lots of wool from Clifton, Texas, a station on appellee's railroad, to the city of New York.   The trial resulted in a judgment for appellee, and we are asked to set it aside because the evidence is insufficient to support it.

The following facts are undisputed: that one of appellant's agents on the 19th day of October, 1900, delivered to appellee at Clifton, Texas, 22,087 pounds, or two carloads, of wool for transportation to New York. Some of the circumstances tend to show that the shipment was to be made via Galveston and the Mallory Steamship Line.   It is certain that such was the route the shipment was made to take.   The distance from Clifton to Galveston, Texas, by appellee's line of railway is 270 miles.   At the time of this shipment the regular schedule of appellee's local freight trains between these points was 12 miles per hour, and the schedule time for its through freight trains was 15 miles per hour. Adopting the schedule time for local freight trains as a reasonable time, the wool should have arrived in Galveston about 10 o'clock a. m., October 20.   The wool did not arrive there, however, until October 26. The wool was not actually unloaded upon the wharf of the transporting steamer of the Mallory line until about November 12, after which it seems to have been transported to New York in the usual time of such transportations by the steamship company and delivered in New York to appellant's commission agent on November 21, 1900.

The proof shows that from October 19, 1900, to November 14, 1900, the market value of the wool in question in New York City was 20 cents per pound.   Thereafter there seems to have been a continuous decline in the market until after the delivery in New York as stated.

As presented to us the only controversy in the evidence is as to the time of the delivery by appellee at Galveston.   The shipping contract provided that appellee's liability should "terminate on tender of delivery to a connecting carrier," and the contention of appellee and the theory upon which the case seems to have been tried is that a tender of delivery of the wool in question was made to the steamship line on October 26, 1900, and that had the Mallory line exercised due diligence in the further transportation, the wool would have arrived in New York prior to any decline of the market.   If this be admitted, however, it does not follow that appellee should be relieved of liability.   The earliest date that the evidence shows that there was a "tender of delivery," as insisted upon by appellee, was October 26, 1900.   No explanation of the long delay from October 19 to October 26 appears, from which, hence, negligence on appellee's part may be inferred.   It can not be said there-

fore that this did not contribute with the negligence, if any, of the Mallory line, in bringing about the injury complained of. The precise question in principle has been before us in several cases. In the case of Texas & Pacific Ry. Co. v. Smith & White, 34 Texas Civ. App., 571, 79 S. W. Rep., 614, in which a writ of error was refused, the appellant therein sought to relieve itself of its own negligence on the ground that had the connecting carrier used due diligence in the further transportation, the cattle involved in the shipment would have arrived at their destination prior to a decline in the market price. We there said: "While appellant was not liable for the delays resulting alone from the negligence of the other carriers, each and all of them were liable to appellees for the consequences of their combined negligence. It can not be said that appellant's negligence was not in part the efficient cause of the loss of a better market merely because it would not have caused such loss if there had been no negligence on the part of the other carriers, for the same might be said by them of appellant's negligence, and they might not have delayed the train if appellant had not first done so. Where loss actually results from concurring causes no one of them is remote, but all are proximate. A cause can not be concurrent with a proximate cause and remote at the same time." We think the principle so announced is the law, and that its application to the facts of the case now before us requires the reversal of the judgment. See, also, Shelton v. Northern Texas Traction Company, 32 Texas Civ. App., 507, 75 S. W. Rep., 338, and authorities therein cited.

Judgment reversed and cause remanded.

*Reversed and remanded.*