SULZBERGER & SONS CO. OF AMERICA v. PAGE et al. (No. 1173.)

(Court of Civil Appeals of Texas. Amarillo. May 16, 1917.)

1. MUNICIPAL CORPORATIONS ☞705(10) — RAILWAY CROSSING ACCIDENT — DUTY OF FLAGMAN AT CROSSING—"ORDINARY CARE."

A railway crossing flagman is obliged to use ordinary care in keeping a lookout and giving warning of approaching trains to the traveling public, "ordinary care" being such as an ordinarily prudent person would use in discharging such a duty, although greater diligence may be demanded in such vocation than in others less hazardous.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1515, 1517.

For other definitions, see Words and Phrases, First and Second Series, Ordinary Care.]

2. MUNICIPAL CORPORATIONS ☞705(10) — RAILWAY CROSSING ACCIDENT — CONTRIBUTORY NEGLIGENCE.

If flagman at railway crossing failed to use ordinary care in keeping lookout and warning driver of wagon, which negligence proximately caused flagman's injury, latter could not recover damages therefor.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1515, 1517.]

3. MUNICIPAL CORPORATIONS ☞706(7) — RAILWAY CROSSING ACCIDENT — QUESTION FOR JURY—CONTRIBUTORY NEGLIGENCE.

The question of whether the railway flagman at a street crossing used ordinary care in warning driver of a wagon which pushed flagman close to track, causing him to be struck by a car as he was attempting to keep the team and wagon away from the track, was for the jury.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1518.]

4. MUNICIPAL CORPORATIONS ☞706(8) — RAILWAY CROSSING ACCIDENT — INSTRUCTIONS—CONTRIBUTORY NEGLIGENCE.

Instructions that if a railway crossing flagman, injured by being pushed onto track by approaching vehicle, was negligent in failing to use ordinary care in keeping lookout and warning driver, he could not recover from owner of wagon, held to properly apply the law to the evidence.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1518.]

5. MUNICIPAL CORPORATIONS ☞706(6) — RAILWAY CROSSING ACCIDENT — QUESTION FOR JURY—NEGLIGENCE.

Evidence held sufficient to submit to jury the question of a driver's negligence in not stopping when signal to do so was given by railway crossing flagman and whether it proximately caused flagman's injury.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1518.]

6. MUNICIPAL CORPORATIONS ☞705(1)—DUTY OF TRAVELING PUBLIC AT RAILWAY CROSSING.

The traveling public have no right to go across a railway crossing without using ordinary care to avoid injuring flagman there located.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1515.]

7. MUNICIPAL CORPORATIONS ☞705(1) — DUTY OF PERSONS USING HIGHWAY.

It is the duty of all persons rightfully on the street to use care not to injure other persons rightfully there, whatever their duties may be.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1515.]

8. MUNICIPAL CORPORATIONS ☞706(6) — RAILWAY CROSSING ACCIDENT — QUESTION FOR JURY—RIGHT TO ASSUME SAFETY AT CROSSING.

The question of whether driver could assume that a railway crossing was safe, without being negligent, where he pushed flagman on track causing latter's injury, was for the jury.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1518.]

9. MUNICIPAL CORPORATIONS ☞705(11) — RAILWAY CROSSING ACCIDENT—JOINT TORTFEASORS.

Where defendant driver pushed railway flagman on track causing latter's injury, driver must have been guilty of negligence proximately causing the injury either alone or concurrently with the railway to be liable therefor, and the de-

gree of culpability as to driver and the railway company is immaterial.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 1515.]

10. TRIAL ☞260(1) — REFUSAL OF REQUEST COVERED BY CHARGE.

There was no error in refusing a requested charge and in giving other charges, where the charge given covered the various features of the case.

[Ed. Note.—For other cases, see Trial, Cent. Dig. § 651.]

11. APPEAL AND ERROR ☞1033(5)—HARMLESS ERROR — INSTRUCTIONS FAVORABLE TO APPELLANT.

Appellant cannot complain of a charge which was favorable to its case.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 4056; Trial, Cent. Dig. § 587.]

12. MUNICIPAL CORPORATIONS ☞705(10) — RAILWAY CROSSING ACCIDENT — CONTRIBUTORY NEGLIGENCE.

If a driver did not exercise ordinary care to discover a railway crossing flagman and heed his signals, and thereby forced flagman into danger, and to save the driver's life the flagman acted upon the impulse of the moment and was injured thereby, the flagman's actions will excuse him from contributory negligence.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 1515, 1517.]

Appeal from District Court, Dallas County; Kenneth Foree, Judge.

Action by B. W. Page and others against the Sulzberger & Sons Company of America and another. Judgment for defendants, and defendant named appeals. Affirmed.

Burgess, Burgess, Chrestman & Brundige, of Dallas, for appellant. Houston Wood, E. P. Dougherty, Flippen, Gresham & Freeman, and Carden, Starling, Carden, Hemphill & Wallace, all of Dallas, for appellees.

HUFF, C. J. It is alleged substantially, and admitted in the pleadings, that on the 30th day of May, 1914, the appellee, Page, was employed by the Texas & Pacific Railway Company, as a flagman, and as such it was his duty to keep a lookout for travelers on St. Paul street, in the city of Dallas, approaching the crossing of the railroad track along Pacific avenue, and to keep a lookout for trains and warn travelers seeking to use the crossing of the approach of trains. The allegations and the facts show Pacific avenue runs east and west and the railway company's tracks are laid about the center of this avenue. St. Paul street runs north and south and ends with the south line of Pacific avenue. Live Oak street runs northeast and southwest and crosses Pacific avenue at the same point approximately where St. Paul street ends. Masten street runs practically north and south, the south end being at the north line of Pacific avenue, nearly opposite the north end of St. Paul street. The appellant company's place of business is on Live Oak street and Pacific avenue, situated in the V formed by these two streets on the north side of the avenue. The appellant was en-

gaged in handling, packing, and shipping meat in Dallas. The railroad company operated a motorcar from the city of Paris to the city of Dallas, which passed over the crossing on which appellee was stationed as flagman. The appellee was injured at this crossing by being struck by the motorcar of the railroad company and knocked down on the date alleged. The car which struck him was traveling along the track of the railroad, going west on Pacific avenue. While the car was a short distance east of the crossing, one U. S. Deming, driving a span of mules to a wagon belonging to appellant packers, was on St. Paul street south of the crossing and was driving north and approaching Pacific avenue, where the appellee was near the railroad track. It is alleged by appellee that he flagged Deming to stop, but that he continued to drive directly toward appellee in a trot until his mules forced or caused him to get too close to the railway track, and thereby caused the motor to strike and knock him down, inflicting the injuries alleged. The negligence alleged as to appellant is that Deming saw and knew appellee's position directly in front of him and knew the motorcar was approaching, or by the use of ordinary care could have known, but instead of stopping, as was his duty, he continued forward, and appellee knowing that the motorcar was approaching, and that there would be a collision between the car, mules, and wagon, unless he got Deming to stop, flagged him and used his efforts to stop him, and in doing so was forced and compelled by the team and wagon to go so near the track as to be struck by the car; that, as a result of Deming's negligence in continuing to drive near to and against appellee, he was injured in his effort to save human life. It is also alleged the railroad company was negligent, in that the motorman of the car saw and realized the danger of appellee's position in time to have stopped and avoided striking him, or could have done so by the exercise of ordinary care; that the motorman was negligent in failing to stop the car or to reduce its speed. The railway company was negligent in constructing and operating a car so the motorman could not keep a proper lookout, and that the car was running at an unlawful rate of speed and in violation of article 415 of the charter of the city of Dallas. The appellant packers answered that appellee failed to perform his duty as flagman and was negligent, thereby contributing to his injury, directly and proximately; that it was his duty at that time to be, and he knew he should be, upon the crossing where he could be seen by people traveling on St. Paul street, which he failed to do until the car was nearing the crossing and until the wagon had approached within 25 feet thereof. It will be unnecessary to set out the railway company's answer, as it is not complaining

on this appeal, but may be noticed, if necessary, later in disposing of the assignments. The jury found for appellee damages against both defendants in the sum of $3,000, but from which amount as to the railway company deducted $2,500. The court rendered judgment in accordance therewith, which is unnecessary to set out, as no complaint is made as to its rendition.

The first and second assignments are to the action of the court in refusing to instruct a verdict for appellant, and in refusing to set aside the verdict, because it is asserted the evidence is conclusive that the injury was not the result of the negligence of appellant's agents. We believe the evidence is sufficient to have warranted the jury to find that the appellee was on the crossing so that he could have been seen by Deming, and that he was there sufficient time, signaling both him and the car, to have stopped before .crowding or forcing the appellee so near the track as to be struck by the car. The facts will warrant the finding, if the driver had used ordinary care, he would have seen the appellee in time to have prevented the injury, and also that at the critical moment, and immediately before appellee was struck by the car, the driver swerved his team so as to catch appellee and cut off his escape, and but for which the appellee would have avoided the car. The trial court therefore properly submitted the case to the jury, and the verdict has evidence to support it.

The third assignment complains at the refusal of the following requested instruction:

"You are instructed that it was the duty of plaintiff to be on the crossing of St. Paul street and Pacific avenue on the occasion in question in a position from which he could see the approach of trains and cars, and at the same time see the approach of travelers on St. Paul street coming in the direction of the crossing of said street, and give such travelers signals of danger in time to enable such travelers, including the driver of defendant Sulzberger & Sons .Company's wagon, to stop his team by the use of ordinary care within time to avoid danger to himself and his wagon and team."

Instead of this charge, the court gave the following:

"The plaintiff in this case was employed as a watchman by the Texas & Pacific Railway Company, and as such it was his duty to exercise ordinary care to keep a lookout for vehicles upon St. Paul street approaching the railway tracks, and also to exercise ordinary care to keep a lookout for the approach of the motorcar of the defendant railway company. It was also his duty to exercise ordinary care to give signals of warning to approaching vehicles. It was also his duty to exercise ordinary care to signal drivers of vehicles of approaching trains in time so as to avoid any danger to said vehicles or their drivers from the approaching trains. If you find and believe from the evidence that he failed to exercise this degree of care in any of these respects, and that this failure, if any, caused or contributed to cause his injuries, if any, then he was guilty of contributory negligence, in which event he cannot recover against the defendant Sulzberger & Sons Company of America; and in which event his recovery, if any, you find against the Texas & Pacific Railway Company, should be diminished in accord- ance with instructions given in the court's main charge."

It is asserted as a proposition that it is the duty of flagman at a crossing to keep a lookout for travelers seeking to use it, and to give signals of the approach of trains in time to enable them to avoid danger. In the counter proposition, it is asserted that a flagman is not an insurer, but that it is his duty to use ordinary care to keep a lookout and signal the traveling public. It is also asserted in a counter proposition that the requested instruction was a mere abstract proposition of law and did not apply the law to the facts.

[1-4] It occurs to us, as suggested by appellee, the flagman is not an insurer. It may, we think, be conceded that it is his duty to keep a lookout and to give warning of the approach of trains to the traveling public to enable them to stop and avoid danger. A failure to perform this duty would be negligence on the part of the appellee and would defeat a recovery, if it caused, or proximately caused, his injury. The measure of care in the performance of the duty would be that which the law imposes. It is our view that the duty imposed is "ordinary care"; that is, such care as an ordinarily prudent person would use in discharging such duty. It may be that more vigilance and diligence would be demanded in the performance of this hazardous vocation, both to himself and those using the crossing, than an occupation less so; yet, under the circumstances, as they existed, ordinary care would mean the care required in the performance of that duty. Railway Co. v. Hodges, 102 Tex. 524, 120 S. W. 849. The jurors trying the case are the judges of what constitutes this ordinary care, and, abstractly, it is improper for the court, in its charge, to decide for them what should or should not have been done by the party whose conduct is under investigation. Railway Co. v. Pendry, 87 Tex. 553, 29 S. W. 1038, 47 Am. St. Rep. 125; Railway Co. v. Goss, 31 Tex. Civ. App. 300, 72 S. W. 94. We believe the court's charge properly applied the law to the facts and correctly informed the jury as to what would be the result upon appellee's failure to exercise ordinary care as to appellant.

It is urged by the fourth assignment the court should have given the specially requested instruction:

"You are instructed that the driver of the wagon of defendant Sulzberger & Sons Company of America owed no duty to protect plaintiff from injury until he discovered that danger was imminent."

The fifth assignment of error is predicated upon a requested instruction involving the same proposition as in the above, in which appellant sought to have the jury told, if the driver discovered the peril of appellee, upon such discovery, if he used all the means at his command to avoid injury to him, to find for appellant. The trial court instructed the

jury it was the duty of the driver to use ordinary care to avoid injury to appellee, and, if he failed to use such care, he would be guilty of negligence. He also defined "ordinary care," giving the approved definition of that term.

[5, 6, 7] If the evidence offered by appellee is the correct description and position of the parties, the appellee had entered his flagman's house during a rain, but had emerged from the house and was on the sidewalk when the driver emerged from one street into St. Paul street, driving north for the crossing. The appellee flagged him and walked into the middle of the street. The driver was going in a sweeping trot and traveling on the right-hand side of the street; but, immediately before the car struck appellee, he pulled his team to the left or west, and in doing so crowded or forced appellee to a position so as to be struck by the car. The testimony is sufficient to show that the driver made no attempt to pull up his team until he was upon appellee. Bystanders testified that the team turned to the left and west, and in doing so the mules crowded appellee against the car by which he was knocked down. This testimony warrants the finding that appellee was within the view of the driver in ample time for him to have stopped before reaching the railway track. The driver himself testified that he did stop within 20 or 25 feet of the track, and that he did not strike or push the appellee against the car or onto the track. Other witnesses testify his mules did touch or crowd appellee onto the track. It appears to be the contention of appellant that there was no duty on the part of the driver to look out for the flagman; that, if he did not see the watchman until he was in peril, no duty arose as to care toward him. This accident occurred on a public street in a populous city, at the crossing of three streets and a railroad, at which a watchman was stationed. It would be useless to have a flagman if there was no duty to look out for him. Certainly there is no law which would give the traveling public the right to rush over the crossing without using some degree of care not to injure the flagman. If the flagman was performing his duty at his station and exercising ordinary care in doing so, then there was the duty of ordinary care on the part of the driver to look for him, heed his signal, and not to injure him. This duty was imposed upon him before appellee was placed in peril by the driver's negligence. The true question in this case was: Did the driver, soon enough, by the use of ordinary care, discover the situation of appellee to have prevented placing him in the perilous position to which he was forced? We do not think a party can close his eyes to the necessity of looking for another lawfully in a public street, until by his wrong he has forced him into a perilous situation. This duty, it appears to us, does not depend upon the fact that the injured party may owe a higher degree of vigilence than the other. The question is: Was the driver negligent, and did his negligence proximately cause the injury, and whether the appellee was guilty of negligence which proximately contributed to his injury? These were all for the jury under the facts of this case. Each party, being rightfully on the street, owes certain duties to each other. It is their duty to see that they do not carelessly injure others rightfully on the street, whatever their duties may be thereon. The following cases, cited by appellee, we think support the trial court's action: Riley v. Farnum, 62 N. H. 42; Smith v. Bailey, 14 App. Div. 283, 43 N. Y. Supp. 856; Quirk v. Holt, 99 Mass. 164, 96 Am. Dec. 725; Jones v. Swift, 30 Wash. 462, 70 Pac. 1109. This court has heretofore substantially so held in the case of U. S. Express Co. v. Taylor, 156 S. W. 617.

[8] The first sixth assignment will be overruled for the reason that the facts did not warrant the charge requested, and that it, in effect, assumes that the flagman was absent from the crossing. The question, it appears to us, is whether he was in such position as to have been seen by the driver in time to have stopped before the collision. The charge may have presented correctly an abstract proposition of law, but it did not apply to the facts, and assumes as a matter of law, we think, that the driver could assume the crossing was safe under the then circumstances. This, under all the evidence, was a question of fact for the jury whether he could then so assume without being negligent.

[9] Under the second sixth assignment, the ninth assignment, the tenth assignment, and the eleventh assignment, the proposition advanced is substantially, where there is no community of action, one wrongdoer will not be bound by the action of the other wrongdoer. The charge requested under the sixth assignment was to the effect that appellant would not be liable for any injury sustained by appellee, which resulted directly or proximately, from the negligence of the railroad. The court, in the main charge, instructed the jury that, if the negligence of both defendants acting concurrently was the direct and proximate cause of the injury, both would be liable. In addition to the above, the court instructed, in the ninth and tenth paragraphs of the main charge, that if the jury should find that either was guilty of negligence, but failed to find such negligence of either of said defendants alone, or acting concurrently with the negligence of the other, was the direct and proximate cause of the injury, to find for the defendant; or, if they failed to find that appellant was guilty of negligence, or if they found it was guilty of negligence, but failed to find that such was the direct and proximate cause of the injury, then in either of which events to find for appellant. It will be seen from the court's charge that appellant must have been guilty

of negligence which was the proximate cause of the injury, either alone or concurrently with the railroad. It seems to us the entire charge, when read as a whole, presents the law of the case on this question. We think it of no consequence if another person than the one charged contributes or concurs to produce injury—each of the wrongdoers is liable for the entire damage. The degree of culpability is immaterial. 1 Shearman & Redfield (Street's Ed.) § 122; Railroad Co. v. Norris, 184 S. W. 261; Railroad Co. v. Goodwin, 177 S. W. 545. Intervening agencies, as a rule, do not interrupt the current of responsibility or connection between the negligence and the injury, and, in order to accomplish such a result, they must entirely separate the original wrong and in themselves be responsible for the injury. If it required both agencies to produce the result, or if both contributed thereto as concurrent forces, the presence or assistance of one will not exculpate the other, because it would still be the efficient cause. Railway Co. v. Cardwell, 187 S. W. 1073, and authorities cited; also, authorities cited by appellee—Shelton v. N. Tex. Traction Co., 32 Tex. Civ. App. 507, 75 S. W. 338; Butterick, etc., v. Railway Co., 39 Tex. Civ. App. 640, 88 S. W. 299.

[10] We think there was no error in refusing the requested charge and in giving the charges complained of, especially in the light of the other charges of the court covering the various features of the case.

The propositions under the seventh and twelfth assignments have been, we think, sufficiently answered in discussing assignment No. 4 and other assignments.

[11] The eighth assignment appears to complain of the concluding sentence of the fourth paragraph of the court's charge because the court confined the jury to the consideration of the definition of the negligence of the appellant and no other. The negligence there defined was confined alone to appellant's servant; it did not purport to define the duties of the railway company or of the flagman. If the appellant was guilty of other acts of negligence not included in that definition, the charge would be to its benefit, of which it had no just ground of complaint. Railway Co. v. Votaw, 81 S. W. 130.

[12] The thirteenth assignment is overruled. The complaint here made is to the twelfth paragraph of the court's charge. It is urged the charge authorized the jury to excuse appellee from contributory negligence on account of his perilous position produced suddenly and unexpectedly. It is urged that such rule would apply to the railway company, and not to the appellant, for the reason that his peril resulted from his employment. The perilous situation here presented arose, as contended by appellee, from

the negligent failure of the driver to observe the signals of the flagman, and thereby forcing him to hazard further effort to stop the team and save the life of the driver. It was such negligence of appellant that forced appellee into the perilous position when appellant's servant discovered him. We believe the trial court correctly conceived that, if the driver did not exercise ordinary care to discover appellee and heed his signals and thereby forced the flagman into danger, his recklessness threatened a collision with the car, and, to save the life of the driver, appellee acted upon the impulse of the moment, this particular act, if so impelled by the impulse, should excuse him from contributory negligence. The charge is not subject to the criticism that the particular occupation in which appellee was engaged was the occasion of the impulsive action, but such perilous position was the result of the wrongful act of the driver which brought about and required instant action in order to save his life. If the charge was not full enough on that point, a special charge covering the defect or omission, if any, should have been requested. The charge we do not believe subject to the appellant's criticism.

The fourteenth assignment is overruled for the reasons above given.

We believe the case should be affirmed.