### ROBERTSON et al. v. HOLDEN. (No. 11825.)

Court of Civil Appeals of Texas. Fort Worth. June 11, 1927.

Rehearing Denied July 9, 1927.

1. Negligence ⟝136(25)—Whether overturning of ambulance injuring occupant was due to driver's negligence held for jury.

Whether overturning of ambulance, which struck automobile at intersection, injuring girl who was attending brother in ambulance on way to hospital, was due to ambulance driver's negligence *held*, under the evidence, for the jury.

2. Negligence ⟝22½—Ambulance driver is not exempted from duty to use due care by ordinance giving right of way.

The driver of an ambulance is not exempted from the duty to use due care, or from the consequences of his failure to do so by ordinances of the city of Fort Worth, which give to ambulances on emergency calls right of way through the streets.

3. Negligence ⟝61(2) — Ambulance driver's negligence would nevertheless be proximate cause of injury to occupants, though negligence of driver of automobile was concurring cause.

The negligence of a driver of an ambulance resulting in a collision with an automobile would not be prevented from being a proximate cause of injury to the occupants of the ambulance by the fact that negligence of the driver of the other automobile was also a proximate cause, since where loss results from concurring causes, both are proximate.

---

⟝For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**4. Negligence** ⊚‑‑136(25) — **Whether result could be anticipated from negligent act is question of fact.**

Whether a certain result could be anticipated from a negligent act or omission is usually a question of fact, and becomes one of law only when but one reasonable conclusion can be drawn from the facts.

**5. Master and servant** ⊚‑‑330(1)—**Court may assume ambulance driver was acting within authority in absence of proof to contrary.**

In the absence of allegation or proof to the contrary, the reviewing court may assume that an ambulance driver in taking an injured person to the hospital was acting within the scope of his authority.

**6. Evidence** ⊚‑‑14—**It is matter of common knowledge that ambulance carrying injured person requires attendant on inside.**

It is a matter of common knowledge that fast moving vehicles or ambulances carrying badly injured people require some one inside the vehicle to steady the injured person and prevent further injury to him.

**7. Master and servant** ⊚‑‑332(1)—**Ambulance driver's agency held for jury.**

Allegations and proof of the agency of ambulance driver in driving ambulance carrying injured person to hospital *held* sufficient to take case to jury, in suit against owners by occupant of the ambulance for injuries sustained in collision.

**8. Appeal and error** ⊚‑‑1040(10)—**Error, if any, in not sustaining defendant's exception to allegation of specific negligence held not prejudicial to defendant, where jury found act was not negligent.**

Error, if any, in failing to sustain defendant's exception to allegation of specific act as negligence, *held* not prejudicial to defendant, where the jury found that the defendants were not negligent therein.

**9. Negligence** ⊚‑‑140 — **Instruction defining "proximate cause," without defining new independent cause, held not error.**

Definition of "proximate cause," as that which in continuous sequence, unbroken by any new, independent cause, produces an event without which the event would not have occurred, *held* adequate in instruction in suit for injuries from ambulance driver's negligence, without definition of "new independent cause," in view of the uncontradicted testimony tending to show injury actually resulted from negligence, and moderate amount of verdict.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Proximate Cause.]

Appeal from District Court, Tarrant County; H. S. Lattimore, Judge.

Action by Lois Holden by C. C. Holden, her father, as next friend, against L. P. Robertson and another. Judgment for plaintiff, and defendants appeal. Affirmed.

See, also, 294 S. W. 667.

Burgess, Burgess, Chrestman & Brundidge, of Dallas, Chas. T. Rowland, of Fort Worth, and L. E. Elliott, of Dallas, for appellants.

Houtchens & Clark, of Fort Worth, for appellee.

BUCK, J. On August 30, 1924, Clyde C. Holden, his sister, Lois Holden, and three other girls were riding in a two-seated automobile driven by Tom Smith. The two young men were about 19 years of age, and the girls' ages ranged from 14 to 16 years. It was Sunday afternoon, and they were driving west from Riverside, in the eastern part of Fort Worth, and as they were riding on Belknap street, young Holden, who was riding on the running board, fell on the street and was badly injured. An ambulance of Robertson & Mueller, driven by George L. Mahan, responded to a call, and the injured youth was put in the ambulance, and the driver requested Lois Holden to ride inside of the ambulance with her injured brother. One of the other girls, Ella Kurz, accompanied her. The injured youth was lying on a stretcher attached to the side of the ambulance, and Lois Holden sat near his head and Ella Kurz sat near his feet. The accident aforesaid occurred in front of 505 East Belknap street, and the ambulance started west on Belknap street and turned south on Throckmorton street. The siren or gong was being sounded probably all the time. As the ambulance approached West Seventh street, a street car going east had stopped on the west side of Throckmorton street to permit passengers to alight. A Ford car was on the south side of the street car also going east. Just before the ambulance reached West Seventh street the street car started up, being operated by a new operator; that is, one that had been in the employment of the street car company for a short time. But the instructor, who was accompanying and teaching the new operator, held up his hand, and probably told the operator to stop the car, which he did, before it got into Throckmorton street. The Ford car, on the south of the street car, stopped momentarily too, but then started east, and as its hind wheels were crossing the east rail of the street car track, running north and south, the ambulance struck the rear of the Ford car, and then turned towards the west side of the street and then towards the east side, and turned over at the curb on the east side of the street, on the west side of and towards the front of Ellison's furniture building. The crowd gathered quickly, and the two young ladies were taken out of the ambulance and also the injured youth. Another ambulance was called and the two girls and the young man were taken to St. Joseph's Hospital, in the south part of the city, in Main street. The young man died that night.

Lois Holden, by her father, C. C. Holden,

as next friend, filed this suit against the partnership of Robertson & Mueller, composed of L. P. Robertson and F. P. Mueller, owning and operating an undertaking business in the city of Fort Worth, and owning the ambulance in question. Plaintiff alleged that when Clyde Holden was placed in said ambulance, Lois Holden was by the defendants herein, by and through their agent, servant, and employee, invited to get in said ambulance and ride with her brother, and that they also invited the other young lady, Ella Kurz, to get in the ambulance, and by virtue of such invitation the defendants bound and obligated themselves to use ordinary care to safely convey the said Clyde Holden to said hospital, and also to safely convey the said Lois Holden to such place, and not harm her en route to said hospital. That said George L. Mahan drove said ambulance at a high, excessive, terrific, and dangerous rate of speed, to wit, more than 50 miles per hour down and along Throckmorton street, from Weatherford street toward the south to a short distance south of Seventh street on said Throckmorton street, and drove the ambulance rapidly, carelessly, and recklessly and so dangerously that the said Mahan turned said ambulance over on the hard cement street at the intersection of the streets, and the consequent injury to plaintiff was caused by the negligence of the driver. That said Mahan was an inexperienced driver of ambulances, and had driven an ambulance for only a very short time prior to the date of the accident, and was therefore unfit to drive an ambulance at the rate of speed at which he was driving on the date in question. That the defendants were negligent in permitting this inexperienced man to drive the ambulance. That said Mahan was a reckless driver and that his inexperience, recklessness, and unfitness for such work were well known to the defendants, and that in permitting him to drive the ambulance the defendants were negligent. That said Mahan was driving the ambulance at the time of the collision more than 60 miles an hour; and that he had driven it at such excessive speed at other times, and his act in so doing was known to the defendants. That defendants had told Mahan to drive the ambulance as rapidly as he could, and that in driving at such excessive rate of speed on this day, he was acting in obedience to instructions given him by the defendants, and such negligence contributed to and was the proximate cause of the injury to plaintiff. That the city of Fort Worth was then and had been for a long time prior thereto a highly populated city, and had a population of 175,000 inhabitants, and Throckmorton street was one of the main streets and thoroughfares in the city, and that there were numerous streets crossing over Throckmorton street extending east and west, and there were great numbers of people going up and down Throckmorton street, which extended north and south, and there were great numbers of people, both in vehicles and on foot, traveling the cross streets at all hours of the day, all of which facts were known to the defendants and to Mahan. That at the time of the accident and injury complained of, there was a building under construction at the corner of Seventh and Throckmorton streets on the west side of Throckmorton street and on the north side of West Seventh street, and an excavation had been made and a board fence approximately 6½ feet in height erected along the west side of Throckmorton street extending from Sixth to Seventh streets. There was a rail or guard for the purpose of warning people on foot and vehicles from said excavation place, and the board fence obstructed the vision of persons coming from the west on Seventh street and those seeking to go over Throckmorton street at Seventh street; and that such facts were known to the defendants and to the driver. That while driving down Throckmorton street on the date of the injury said driver drove east of the center of Throckmorton street, and while so driving he ran into an automobile, which was located also to the east of the center of Throckmorton street, and struck the same and continued to run the said ambulance to the east of the center of Seventh street into an iron fence located along the curb on the east side of Throckmorton street, just to the south of Seventh street, and turned over the same with great violence and great force, and injured the plaintiff. That the defendants, by and through their agent and employee, could easily have driven on the west side of Throckmorton street, which way was clear, without obstructions, and if he had so driven he would not have run into the iron railing on the east side of Throckmorton street or into the Ford car, as aforesaid. That an ordinance of the city of Fort Worth requires that one driving a vehicle shall keep towards the right-hand side of the street.

It was further alleged that a hospital at the corner of Fourth and Jones streets, known as the City-County Hospital, was a great deal nearer than the St. Joseph's Hospital, and that the defendants were negligent in not taking Clyde Holden to the City-County Hospital. That Throckmorton street from Weatherford on the north to Seventh street extends, on the south, a distance of from 1,200 to 1,500 feet, and that the driver of the ambulance increased his speed, until a short distance and within 500 feet from Belknap street it had reached the speed of approximately 40 miles an hour, and increased said speed until it had neared Seventh street and just before its overturning, and it was negligence for the driver to have driven said ambulance at such speed, and if he had not done so the ambulance would not have collided with the Ford car, which was being driven at

a speed not exceeding 8 miles an hour. That the driver of the ambulance did not keep a proper lookout for persons crossing over Seventh street, and such ommission was negligence contributing to plaintiff's injury. Plaintiff alleged her injuries consisted of a severe and painful gash in her forehead, a jar and shock to her entire nervous system, affecting her physically and mentally, and she suffers continuous pain from the wound and bruises upon her forehead; that her right arm just below the elbow was badly skinned, lacerated, twisted, sprained, and partially dislocated, and that the ligaments in her right hand had been torn and she would never be able to use said hand again, and that her kneecap was injured, and that she often falls to the floor; that her right hip was sprained and bruised; and that the ligaments and muscles thereof were torn, sprained, and bruised. She prayed for $25,000 actual damages, with interest and costs of suit.

The defendants interposed a general demurrer and certain special exceptions, and further pleaded the following ordinance of the city of Fort Worth as authorizing and justifying the rate of speed at which the ambulance was being driven, and as showing that the ambulance had the right of way over all traffic on the streets of Fort Worth:

"Police emergency, fire department, ambulance, underwriters, salvage corps, emergency repair vehicles of city street railway and public service companies and United States mail shall have the right of way on any street and through any procession when in regular course of their property duty.

"The driver of a vehicle, upon the approach of fire apparatus, police apparatus, ambulance, and emergency vehicles, shall immediately draw up said vehicle as near as possible to the right-hand curb, parallel thereto, and bring it to a standstill and keep it at a standstill until such apparatus has passed, and all street cars shall come to a full stop when running parallel with such emergency vehicles."

Also this ordinance:

"All vehicles and street cars going in a northerly direction or a southerly direction shall have the right of way over all vehicles and street cars going in an easterly or westerly direction."

That in addition thereto there existed in the city of Fort Worth, and had existed for a long time prior to the date of the accident, a custom and usage for ambulance drivers, on emergency calls in said city, to use the middle of the street, which is contemplated by the ordinances above referred to, and which is both a practical and safe method of driving ambulances on emergency calls; that there also existed at such time, and had existed for a long time prior thereto, the usage and custom of all other traffic, including pedestrians and ordinary vehicles, to give the right of way to ambulances driven on emergency calls; that under the ordinances of the city of Fort Worth drivers of ambulances on emergency calls had a right to and, under the usage and custom existing long prior to the date of the accident, did operate their said ambulances in reliance upon due regard being had to such laws, ordinances, and custom; and that the said ambulance in question was so operated by the driver thereof at the time and place mentioned in plaintiff's petition. That by reason thereof and but for the unexpected and sudden violation of the ordinances, laws, and custom by the driver of an ordinary vehicle, which the driver of said ambulance did not and was not bound to anticipate, said accident would not have happened, and that the driver of said ambulance was not guilty of negligence.

After the conclusion of the testimony, the defendants asked for a peremptory instruction, but this was overruled. The cause was submitted to a jury on special issues, which the jury answered as follows:

"(1) That the driver of the ambulance was negligent in driving at the rate of speed he did as he approached the intersection of Seventh and Throckmorton streets on the occasion of the collision. (2) That such negligence was the proximate cause of the turning over of the ambulance. (3) That the driver of the ambulance was not negligent in not proceeding on the occasion involved directly to the City-County Hospital. (4) That the driver was negligent in driving said ambulance at the place he did with reference to the middle of Throckmorton street as he approached Seventh street, and that such negligence was the proximate cause of the overturning of the ambulance. (5) That the overturning of the ambulance was not an unavoidable accident. (6) That plaintiff was entitled to a judgment for $750."

Judgment for plaintiff, in accordance with the verdict, was rendered, and from this judgment the defendants have appealed.

### Opinion.

[1] Appellants have 16 propositions in their brief, and have grouped them. The first and second propositions raise the point that since the overturning of the ambulance was due to the unlawful driving of an ordinary vehicle into the path of said ambulance as it was traveling on Throckmorton street, and in view of the fact that an ambulance on an emergency call had the right of way, the collision and the subsequent overturning of the ambulance and the injury, if any, to plaintiff, were not due to the negligence of the driver of the ambulance.

Harry Beason testified that he was in the garage business in Fort Worth and had lived in Fort Worth about 20 years; that he had had experience in driving an ambulance; that he could, by using all the means at hand, with due regard to the safety of those in the ambulance, assuming the ambulance to be in good condition, while driving down the street, such as Throckmorton, on a clear day, at the rate of 50 miles an hour, stop the ambulance

in 40 to 50 feet; that is, if he could see four blocks ahead; that ambulances and fire trucks generally take the middle of the street, go right down the car line, if there is a car line on the street; that they figure they would have a better chance if anything should run out from the side to avoid a collision. That with the ordinance requiring vehicles to pull up along the side to let fire trucks and ambulances go through, the drivers of fire trucks and ambulances figure that it is safer to drive down the middle of the street; that it gives more room for the vehicles using the street and withdrawing to give the right of way, to go on the side of the street.

No testimony was offered by the defendants, only the two city ordinances above set out were admitted in their behalf. Thus the jury did not have the benefit of any explanation which might have been made by the ambulance driver as to why he got over on the east rail of the street car track on Throckmorton street, and why he collided with the Ford car and did not avoid the collision.

[2] While the driver of an ambulance or a fire truck or engine has the right of way by ordinances of the city of Fort Worth on the streets thereof, when on emergency calls, yet such right of way does not exempt them from the duty of using due care, or from the consequences of any negligence for the failure to use due care.

[3] The defendants below, appellants here, did not request any finding as to whether the driver of the Ford car was guilty of negligence, and as to whether such negligence, if any, was a proximate cause of the collision. We are not prepared to say that he was guilty of negligence. The evidence showed that he was on the south side of the street car just immediately before the collision. He might have heard the siren sounding, but not have been able to locate it or tell whether the ambulance was coming down Throckmorton street or not, or going down some other street. The ordinance does not make it a legal duty of the driver of an ordinary vehicle upon the approach of fire trucks or ambulances, or emergency calls, to drive the vehicle as near as possible to the right-hand curb unless he knows of the approach of such emergency vehicle. There is no evidence that the driver of the Ford car did know of the approach of the ambulance at the time he emerged from behind the street car. There is, further, no evidence to show that the ambulance driver, in the exercise of due care, could not have avoided the collision with the Ford car, by slacking his speed or turning slightly to the right. If he had done either, he would not have hit the Ford car, for the evidence shows that he hit it near the rear. On the whole, we are not able to say that the finding of the jury that the driver of the ambulance was negligent in driving at the rate of speed he did at the intersection of Seventh and Throck-

morton streets, in not proceeding down Throckmorton street near the center of the street, instead of east of the center, or in colliding with the Ford car as he did, is not supported by the evidence. If he had been negligent in either respect, and such negligence was the proximate cause of the collision and the turning over of the ambulance and the injury to plaintiff, the finding of the jury must be sustained.

In Butterick Publishing Co. v. G., C. & S. F. Ry. Co., 39 Tex. Civ. App. 640, 88 S. W. 299, in an opinion by Chief Justice Conner, this court held:

"It cannot be said that appellant's negligence was not in part the efficient cause of the loss of a better market merely because it would not have caused such loss if there had been no negligence on the part of the other carriers, for the same might be said by them of appellant's negligence, and they might not have delayed the train if appellant had not first done so. Where loss actually results from concurring causes, no one of them is remote, but all are proximate. A cause cannot be concurrent with a proximate cause and remote at the same time."

In Shelton v. Northern Texas Traction Co., 32 Tex. Civ. App. 507, 75 S. W. 338, also opinion by Chief Justice Conner, this court held:

"The authorities clearly establish appellant's proposition under the assignment under consideration, to the effect that 'if an accident occurs from two causes, both due to the negligence of different persons, but together the efficient cause, then all the persons whose acts contribute to the accident are liable for the injury resulting, and the negligence of one furnishes no excuse for the negligence of the other.'"

See Fort Worth & D. C. Ry. Co. v. C., R. I. & G. Ry. Co., 47 Tex. Civ. App. 304, 105 S. W. 829, writ of error denied, likewise by Chief Justice Conner.

[4] We think whether a certain result could be anticipated from a given act or omission is usually a question of fact, and becomes a question of law only when but one reasonable conclusion can be drawn from the facts. T. & B. V. Ry. Co. v. McDonald (Tex. Com. App.) 208 S. W. 912; T. & P. Ry. Co. v. Bigham, 90 Tex. 223, 38 S. W. 162. The fact that Frank Ogilvie, riding towards the front of the street car and on the north side, saw the ambulance several blocks up Throckmorton street does not prove that the driver of the Ford car saw the ambulance or even heard the siren, and the fact that he drove out into Throckmorton street tends to show that he did not hear the siren, or at least did not know that the ambulance was coming down Throckmorton street.

[5] Under another group of propositions, the appellants urge that there was neither allegation nor proof that the driver of the ambulance was acting within the scope of

his authority in inviting plaintiff to ride in the ambulance and in driving said ambulance. In the absence of any allegation or proof to the contrary, we have the right to assume that the driver of the ambulance was acting within the scope of his authority in driving it on the date in question. That some one was needed inside of the ambulance when it left Belknap street is evident by the fact that while going down Belknap street and turning into Throckmorton street the ambulance lurched and would have thrown Clyde Holden off of the stretcher if he had not been held on by the two young ladies waiting on him.

[6, 7] We think it is a matter of common knowledge, of which we may take judicial cognizance, that fast moving vehicles or ambulances, carrying badly injured people, require some one inside of the vehicle to steady the injured party, or the stretcher on which he is resting, and to prevent further injury to him. The plaintiff did allege that the defendants undertook to take Clyde Holden to St. Joseph's Hospital in one of their ambulances which was being operated by George L. Mahan, one of their employees, and the evidence shows by the testimony of Lois Holden that one of the defendants' ambulances came to where her injured brother was lying, and it was driven by George L. Mahan. We think there is nothing in this contention.

[8] Under the third group, it is urged that the trial court erred in not sustaining the exception to the allegation that the defendants were guilty of negligence in not taking Clyde Holden to the City-County Hospital, instead of to St. Joseph's Hospital, because the former was only some 4 or 5 blocks from the place of the first accident. Since the jury found for defendants on this issue, we think no prejudice to the defendants is shown by its submission.

[9] The court defined proximate cause in the following language:

"Proximate cause is that cause which in a natural and continuous sequence, unbroken by any new, independent cause, produces an event, and without which that event would not have occurred, and to be the proximate cause of an event, it must have been reasonably anticipated by a person of ordinary prudence that the injury or some similar injury would occur. There may be more than one proximate cause of an event."

Defendants objected to the definition given on the ground that said definition furnished no test or rule to guide the jury in determining what is a new, independent cause, such as will break the sequence, and because the term, "new, independent cause," is a technical term requiring some explanation in order to be properly applied by the jury. Defendants further suggested that the jury be instructed in appropriate manner that the term, "new, independent cause," is a cause or agency over which the defendants have no control, and which cause or agency a person of ordinary prudence, in the same or similar circumstances, would not have reasonably foreseen as occurring to bring about the result complained of, and because it does not include the element of anticipation by a person of ordinary prudence in the same or similar circumstances, and because the definition assumes that some injury occurred.

We think that the evidence of Lois Holden and Dr. McElroy, her physician, and her father and mother all show that some injury was inflicted by reason of the collision on Lois Holden. As stated before, the defendant introduced no testimony to the contrary. As to the extent of her injuries there may be said to be some question. But the jury found only the moderate sum of $750 as compensation, and apparently the appellants raise no question as to its excessiveness. Appellee urges that the definition of proximate cause given in the charge is correct, as far as it goes, and that if the defendants desired a more specific definition given, they should have submitted it in a specially requested charge. That failing to do so, they have no ground of complaint. Appellee cites such authorities as M., K. & T. Ry. Co. v. Reno (Tex. Civ. App.) 146 S. W. 207, writ of error denied; M., K. & T. Ry. Co. v. Crowder (Tex. Civ. App.) 55 S. W. 380; W. U. Tel. Co. v. James, 31 Tex. Civ. App. 503, 73 S. W. 79; M., K. & T. Ry. Co. v. Robertson (Tex. Civ. App.) 189 S. W. 284. In the last-cited case the following was said:

"However, if the appellant desire a more explicit or comprehensive presentation of the issue of contributory negligence, it should have been requested by appropriate instructions."

To the same effect is Reynolds v. Weinman (Tex. Civ. App.) 40 S. W. 570, in which the court said:

"The court's charge was correct as far as it attempted to state the law of other issues; and, this being true, if other charges could have been given under the testimony, it was the duty of the defendants to request them. It was not error for the court to omit them."

While it is true that the early decisions are to this effect, yet there are some recent Supreme Court holdings to the effect that where the objection to the charge, or a specially requested charge, calls the attention of the court to any deficiency or insufficiency in the charge as given, the court should give the requested charge, if proper, or should give a proper charge, if the charge tendered is improper for any reason. But we do not think that any further definition of intervening cause was necessary, and overrule this assignment.

We conclude that we cannot disturb the judgment of the court below, and the judgment of the trial court is affirmed.